**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0936-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRET A. HENDERSON,

     Defendant-Appellant.

_____

Submitted March 11, 2019 – Decided April 18, 2019

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 16-04-0355.

Joseph E. Krakora, Public Defender, attorney for appellant (John A. Albright, Designated Counsel, on the briefs).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Dana R. Anton, Senior Assistant Prosecutor, on the brief).

PER CURIAM

A Gloucester County grand jury charged defendant Bret Henderson with second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(2), and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(8).  Before turning to defendant's specific arguments, we briefly review the evidence at trial.

I.

The State contended that defendant's history with his estranged wife, J.B., was the motive for setting fire to what had been the couple's marital home.  During colloquy before trial, the prosecutor indicated his intent to introduce evidence of the frayed relationship, including the parties' appearance in Family Court two days before the fire, during which the judge awarded J.B. possession of the house.  Without conducting a N.J.R.E. 104 hearing or analysis under State v. Cofield, 127 N.J. 328, 338 (1992), the judge ruled the evidence was admissible, as well as "any threats [defendant] made to burn the car and house," finding the evidence was relevant to "motive or . . . intent."

Before the jury, the evidence revealed that in the morning of June 14, 2015, emergency personnel responded to defendant's home, which was ablaze.

A-0936-17T4

Three hours later, the fire was suppressed, but the home was in ruin. One of the firefighters received serious burns to his neck that required medical treatment.[1]

A subsequent investigation revealed that the fire was "set" with two points of origin, suggesting arson. Additionally, videos recovered from a camera mounted on a neighboring home, and security camera footage from a nearby gas station, depicted a man who shared defendant's physical characteristics walking down the street toward the gas station, using a gas pump, and returning toward the home.

Because the State did not provide discovery regarding any out-of-court identification of the man depicted in the video, defendant moved to exclude any identification of the person in the video by a State's witness. The judge granted the motion, holding:

> The witness[es] . . . cannot place themselves in the shoes of being the finder of fact. It's up to the jury to determine whether that is . . . defendant in the video, so I am going to grant [defendant's] [m]otion to [s]uppress the identification of . . . defendant from the video.
>
> In other words, they can't look at the video and say I know who that is.

---

[1] This firefighter was the victim in the aggravated assault count of the indictment.

Despite this order, the investigating detective called by the State as a witness testified that he secured the videos and was "able to see . . . defendant on two separate – –[.]" Defense counsel immediately objected, and at sidebar, moved for a mistrial. The judge denied the motion, but required the State to reconfirm with its witnesses that they were not permitted to identify defendant in the video. The judge issued the following curative instruction to the jury:

> [Y]ou're to disregard the detective's inference as to who's in the video. You will be given an opportunity to see the video and the jury has the responsibility of making the findings of fact[] in order to be able to determine who's in that video. That's up to you. You are the finders of fact.

J.B. testified about her tense domestic history with defendant, including a prior threat defendant made that "he would set the truck on fire and drive it through the house." J.B. vacated the house prior to the fire, and, on cross-examination, defense counsel questioned J.B. whether she paid the gas bill for the house. Apparently, the non-payment of the bill resulted in defendant being unable to switch the service into his name.

Before re-direct, at sidebar, the judge permitted the State, over defendant's objection, to question J.B. about her nonpayment of the bill. Both sides acknowledged that the questioning would likely elicit evidence of specific acts by defendant. Without any Cofield or N.J.R.E. 104 analysis, the judge permitted

the questions "to rebut why this particular bill wasn't changed . . . because it's been brought out before the jury." J.B. then testified that she did not pay the bill because defendant would "turn the heat all the way up and leave the windows wide open. And he would turn the oven on high, with the door open, just running. So you'd walk into a sweltering house with the windows wide open."

During summation the prosecutor suggested that based on defendant's height and body type, "there [was] reason to believe that the individual in the video is . . . defendant." There was no objection.

The jury convicted defendant of the lesser-included offense of third-degree arson, N.J.S.A 2C:17-1(b)(2), and aggravated assault. The judge sentenced defendant to an aggregate term of four-years' imprisonment.

On appeal defendant asserts the following:

> POINT I
>
> THE LOWER COURT'S FAILURE TO GRANT A MISTRIAL, WHEN THE POLICE OFFICER IDENTIFIED DEFENDANT AS THE MAN APPEARING ON SURVEILLANCE VIDEO DURING HIS TESTIMONY CONTRARY TO THE COURT'S RULING THIS [SIC] OUT-OF-COURT IDENTIFICATION WAS INADMISSIBLE [AND] DEPRIVED DEFENDANT OF A FAIR TRIAL.

A-0936-17T4

POINT II

THE PROSECUTOR'S IDENTIFICATION OF DEFENDANT AS THE MAN IN THE VIDEO IN SUMMATION FOLLOWING THE POLICE OFFICER'S IMPROPER OUT-OF-COURT IDENTIFICATION OF DEFENDANT BEFORE THE JURY [WAS] IN VIOLATION OF THE COURT'S RULING [AND] DEPRIVED DEFENDANT OF A FAIR TRIAL. (Not Raised Below)

POINT III

THE TRIAL COURT'S ADMISSION OF N.J.R.E. 404(B) EVIDENCE, INCLUDING ALLEGED THREATS BY DEFENDANT AND DEFENDANT LEAVING THE HEAT AND STOVE TURNED ON TO DRIVE UP GAS BILLS WAS ERRONEOUS, UNSUPPORTED BY AN ADEQUATE LIMITING INSTRUCTION[] AND DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT IV

THE FOUR-YEAR SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF THE LOWER COURT'S DISCRETION.

Having considered these arguments in light of the record and applicable legal standards, we affirm.

II.

Motions for mistrial are "addressed to the sound discretion of the [trial] court; and the denial of the motion is reviewable only for an abuse of discretion."

6

State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (alteration in original) (quoting State v. Winter, 96 N.J. 640, 647 (1984)).  "The same deferential standard that applies to the mistrial-or-no-mistrial decision applies to review of the curative instruction itself."  Ibid.  (citing Winter, 96 N.J. at 647).  An abuse of discretion will only be found when the judge denies the mistrial and provides an instruction when "the vice is plainly ineradicable by an instruction to the jury . . . ."  Winter, 96 N.J. at 647.

In Herbert, we identified three factors to assist our review of the trial court's decision to issue a curative instruction instead of granting a motion for a mistrial or new trial.  457 N.J. Super. at 505-08.  First, we consider "the nature of the inadmissible evidence the jury heard, and its prejudicial effect" because "[e]vidence that bears directly on the ultimate issue . . . may be less suitable to curative . . . instructions than evidence that is indirect . . . ."  Id. at 505.  However, the Court has said that even highly prejudicial evidence, like an expert opining about the defendant's guilt, is amenable to a curative instruction.  See State v. Papasavvas, 163 N.J. 565, 614 (2000) (holding that the expert psychologist's opinion that defendant was guilty was cured by a swift, firm, and specific jury instruction).

A-0936-17T4

Second, we examine the "timing and substance" of the curative instruction, with prompt, firm, and specific instructions being preferred. Herbert, 457 N.J. Super. at 505-06. A curative instruction will generally "pass muster" so long as it is "firm, clear, and accomplished without delay." State v. Vallejo, 198 N.J. 122, 134-36 (2009) (citing numerous cases where swift, firm, and clear instructions cured the prejudice of inadmissible testimony).

Third, we explore whether there is "tolerance for the risk of imperfect compliance[,]" essentially determining whether the inadmissible evidence had a real possibility to lead the jury astray, akin to our reversible error analysis. Herbert, 457 N.J. Super. at 507-08 (citing Winter, 96 N.J. at 647-48).

Here, the State's witness inadmissibly testified to observing defendant in the videos. However, while identification was certainly an important contested fact, the judge's curative instruction has indicia of effectiveness. She issued it immediately, informed the jurors to reject the detective's identification, and reaffirmed the jury's role, as finders of fact, to decide for themselves whether defendant was, in fact, the man depicted in the videos. Accordingly, the judge's decision to deny the motion for mistrial and instead issue a curative instruction was a sound exercise of her discretion.

A-0936-17T4

Defendant's argument in Point II lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(2). Prosecutors are permitted to make passionate and forceful presentations to jurors, constrained by the evidence and reasonable inferences drawn from the evidence. State v. Daniels, 182 N.J. 80, 96 (2004). Here, the prosecutor's statement urging the jurors to conclude defendant appeared in the video was a legitimate comment on the evidence and a reasonable inference to be drawn therefrom. Moreover, the absence of any objection suggests the statement was not overtly inappropriate or inflammatory. See State v. Feaster, 156 N.J. 1, 86-87 (1998). We find no reversible error.

### III.

"A trial court ruling on the admissibility of other-crimes evidence is a discretionary matter that receives 'great deference' and is reversible only if clearly erroneous." State v. Weaver, 219 N.J. 131, 149 (2014) (quoting State v. Gillispie, 208 N.J. 59, 84 (2011)). However, when the court does not engage in a Cofield analysis, we conduct plenary review to determine admissibility. State v. Barden, 195 N.J. 375, 391 (2008) (citing State v. Lykes, 192 N.J. 519, 534 (2007)).

Cofield provides that to be admissible, N.J.R.E. 404(b) evidence must be: (1) "relevant to a material issue"; (2) "similar in kind and reasonably close in

time" to the instant offense; (3) "clear and convincing"; and (4) its prejudice does not outweigh its probative value. 127 N.J. at 338. Defendant's threat to "set the truck on fire and drive it through the house" satisfies the first prong as it is highly probative of motive and intent. See State v. Rose, 206 N.J. 141, 162 (2011). The second prong is not always applicable, State v. P.S., 202 N.J. 232, 255 n.4 (2010) (quoting State v. Williams, 190 N.J 114, 131 (2007)), but here the threatened conduct implied arson and was temporally proximate, since it was made approximately one month before the fire. Although the judge failed to conduct an evidentiary hearing before trial, J.B.'s testimony at trial about the threat was subject to cross-examination, such that "the surrounding circumstances adequately support that the third prong of Cofield was satisfied." Rose, 206 N.J. at 163. Finally, the statement, while prejudicial, is highly probative. Therefore, the admission of evidence of defendant's prior threat was proper.

However, evidence of defendant's practice of leaving the stove on was irrelevant to any material issue in the case, and therefore, its obvious prejudice outweighed its non-existent probative value. The judge permitted the evidence by reasoning it was appropriate to rebut questions posed during cross-examination, i.e., that defense counsel had opened the door.

A-0936-17T4

However, that doctrine is "a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant and inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection." State v. Prall, 231 N.J. 567, 582 (2018) (quoting State v. James, 144 N.J. 538, 554 (1996)). The doctrine does not give the State carte blanche to introduce N.J.R.E. 404(b) evidence and admission of such evidence is still subject to a balancing under N.J.R.E. 403. Id. at 583 (citing James, 144 N.J. at 554). For example, entering irrelevant evidence under the doctrine for the narrow purpose of bolstering a witness's credibility "does not satisfy the relevancy element of the Cofield test." Ibid. (citing State v. Skinner, 218 N.J. 496, 520 (2014)).

Here, the State sought to "explain why [defendant's wife] was behind [o]n her gas bill." The evidence was irrelevant, except to rehabilitate the witness, while its prejudicial character was obvious, given the nature of the charge. Its admission was a mistaken exercise of the judge's discretion, but it does not require reversal.

Not every admission at trial of inadmissible evidence is reversible error. Vallejo, 198 N.J. at 132. "[T]o warrant reversal of defendant's conviction, those errors, singly or collectively, must 'raise a reasonable doubt' as to whether they

affected the result reached by the jury."  Prall, 231 N.J. at 588 (quoting State v. Macon, 57 N.J. 325, 336 (1971)).  "Also, '[t]he error[s] must be evaluated in light of the overall strength of the State's case.'"  Ibid. (alterations in original) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

Here, evidence about defendant leaving the stove and heat on to drive up J.B.'s energy bills was irrelevant.  However, it was introduced on re-direct after defense counsel had posed questions about the subject during cross-examination.  As a result, its admission in this context limited the evidence's prejudicial nature.  Given the overall strength of the State's case, we find no basis to reverse.

IV.

At sentencing, the judge found aggravating factors one, two, three, six, eight, and nine.  See N.J.S.A. 2C:44-1(a)(1) ("[t]he nature and circumstances of the offense, . . . including whether . . . it was committed in an especially heinous, cruel, or depraved manner"); (a)(2) (gravity and seriousness of the offense); (a)(3) (risk of re-offense); (a)(6) (the extent of defendant prior criminal record); (a)(8) (defendant committed the offense against a "fireman"); and (a)(9) (the need to deter).  She also found mitigating factors ten and eleven.  See N.J.S.A. 2C:44-1(b)(10) (defendant would likely respond to probation); and (b)(11)

(imprisonment would impose hardship to defendant or his family). The judge gave moderate weight to aggravating factor one, finding the circumstances were exceptionally cruel or depraved because the possessions of defendant's children were destroyed by the fire.

Defendant contends that the sentence is excessive because the judge misapplied aggravating factor one by "double-counting" an element of arson. See N.J.S.A. 2C:17-1(b)(2) (defining elements of arson as "purposely start[ing] a fire . . . [t]hereby recklessly placing a building or structure . . . in danger of damage or destruction"). We disagree and affirm the sentence.

Our review of a sentence "is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010) (citing State v. Jarbath, 114 N.J. 394, 401 (1989)). Generally, we only determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65, (1984)).]

"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime[,]" State v. Lawless, 214 N.J. 594, 608 (2013), because that would lead to impermissible double-counting. State v. Kromphold, 162 N.J. 345, 353 (2000). However, a court "does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense." State v. A.T.C., 454 N.J. Super. 235, 254-55 (App. Div. 2018) (citing Fuentes, 217 N.J. at 75).

Here, the judge noted that defendant victimized his own children in addition to the intended victim, J.B. While the offense implicates the setting of a fire and destruction of property, the emotional impact inflicted on unintended victims elevated the circumstance beyond what the State was required to prove.

Moreover, the judge only accorded factor one "moderate weight." And, there was substantial evidence in the record supporting her findings regarding the other aggravating factors, including defendant's extensive prior record. The judge imposed a sentence that was in the middle of the authorized sentencing range for a third-degree crime, and she imposed a concurrent sentence on defendant's other conviction. In short, there is nothing excessive about this

sentence, and, even if the judge's finding as to aggravating factor one was erroneous, the sentence does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0936-17T4