# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0240-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDWARD F. BROGAN,

    Defendant-Appellant.

_____

Argued March 17, 2021 – Decided May 17, 2021

Before Judges Fuentes, Whipple and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 18-05-1055.

Jill R. Cohen argued the cause for appellant.

Maura M. Sullivan, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Maura M. Sullivan, of counsel and on the brief).

PER CURIAM

Defendant, Edward Brogan, appeals from an August 6, 2019 judgment of conviction after a jury found him guilty of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(a)(iii); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b). We affirm.

Defendant raises the following issues on appeal:

> POINT I: THE COURT ERRED IN AMENDING THE DATE OF THE OFFENSE CHARGED IN COUNT ONE OF THE INDICTMENT AFTER TRIAL STARTED.
>
> POINT II: IT WAS PLAIN ERROR TO ALLOW EVIDENCE OF BAD ACTS COMMITTED AFTER THE AMENDED DATE OF COUNT ONE OF THE INDICTMENT (not raised below).
>
> POINT III: THE PROSECUTOR'S CONDUCT DURING TRIAL AND HIS REMARKS DURING CLOSING WERE IMPROPER (not raised below).
>
> POINT IV: THE COURT'S SENTENCE WAS EXCESSIVE AS THE COURT FAILED TO GIVE CONSIDERATION TO THE APPROPRIATE MITIGATING FACTORS AND GAVE EXCESSIVE WEIGHT TO THE AGGRAVATING FACTORS.
>
> POINT V: TRIAL COURT ERRED IN IMPOSING A SENTENCE THAT THE COURT ERRONEOUSLY BELIEVED MADE . . . DEFENDANT ELIGIBLE FOR [Intensive Supervision Program (ISP)] WHEN THE DEFENDANT'S CONVICTION MADE HIM INELIGIBLE FOR ISP (not raised below).

A-0240-19

POINT VI: THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO SENTENCE . . . DEFENDANT TO A TERM IN THE THIRD-DEGREE RANGE.

POINT VII: THE COURT ORDERED PAROLE SUPERVISION FOR LIFE WITHOUT FINDINGS.

I.

We draw the following facts from the trial record. In June 2017, Sergeant Christopher Robinson of the Camden County Prosecutor's Office High Tech Crimes Unit (the Unit) began an investigation utilizing a "torrent program,"[1] which he knew was often used to obtain and disseminate child pornography files. A torrent program is also known as a peer-to-peer (P2P) file-sharing program. Once a user accesses a pedestrian search engine, such as Google, to find a torrent directory site that lists hyperlinks for specific files, the program will take over when the user selects a link to the file they wish to download, and begin obtaining the file from another computer that has possession of it. Robinson testified as to prominent keywords a user seeking child pornography can search, in order to find links. One such term known to Robinson was "Siberian Mouse."

---

[1] As gleaned from the record, a torrent program allows for users to download a file from another computer, host the file on their computer, and then allow other users to download their "copy" of the file.

A-0240-19

The Unit's specific torrent program will continuously search the torrent networks for images and videos, which it will compare to libraries, or repositories of known child pornography, such as the National Center for Missing and Exploited Children and Project Vick. When a match is found, the torrent program will download the file on the listing website from a single user, who has a copy of the file.

Although torrent programs typically source the file from multiple users and machines to streamline the download, when performing an investigation, the Unit will make sure each file is downloaded from a single, discrete machine. After the Unit fully downloads the material, its torrent program will block the files from being shared by its own computers. And once the Unit confirms the material is child pornography, it will track the Internet Protocol (IP) address of the source machine, which is in possession of the illicit harmful material. Finally, the Unit will subpoena the Internet Service Provider (provider) for information related to the location and human owner of the IP address.

Robinson downloaded one eighteen-minute video titled "Siberian Mouse" from defendant's IP address on June 28, 2017. This video showed two young females, approximately twelve or thirteen years old, "kissing and

4

A-0240-19

performing various sex acts on each other." Robinson put the video, along with the incriminating digital artifacts and information, onto a disc showing it came from defendant's IP address as a "single-source download."[2]

After Robinson determined defendant's internet provider, he sent the company a subpoena for information related to defendant's IP address. When the provider responded, Robinson went to defendant's house with officers from the Camden County Sheriff's Office and members of the Unit. The team photographed the home, secured any electronic devices, such as USB[3] drives, recorded the evidence, and interviewed defendant.

When Robinson secured defendant's laptop, the team performed a forensic preview, a precursor to a more in-depth subsequent scan, and found archived evidence of a file with the same title of the video Robinson had downloaded, along with numerous images of child pornography. Robinson and a detective spoke with defendant, read him his Miranda[4] rights, and witnessed defendant voluntarily signed a card waiving his rights.

---

[2] A single-source download refers to a file that was wholly downloaded from a specific computer.

[3] Universal Serial Bus drive, also known as a "thumb drive."

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0240-19

During his first interview, defendant admitted using a torrent program and acknowledged how young some of the subjects appeared. Defendant also admitted he purposely searched for "Siberian Mouse," a clear marker of child pornography. He further admitted gratifying himself to the media. Defendant acknowledged the females looked twelve or thirteen years old and admitted searching for child pornography more than a dozen times. Defendant stated he did not know he was sharing the files once he downloaded them. At the end of this interview, defendant admitted the "Siberian Mouse" video "could have" been downloaded from his house, and he may have struggled with deleting and redownloading the material.

At this point, defendant was arrested and taken to the Pennsauken Police Department, where he made similar statements and maintained he did not know the torrent program meant he would be sharing files. During this interview, defendant stated that he assumed the websites were for downloading adult pornography.

Defendant acknowledged he was coming across "hundreds" of images of underage females during his activities, and there was a video with one young female who "was looking very cute." He did "go through some of it," but said he deleted it, and most of the media was not "hard core stuff." Defendant had

last looked at that video a couple days prior, after reinstalling the torrent program once again. Defendant denied being aroused by the child pornography at first, but later confirmed he did gratify himself to one particular person he thought looked older, and that he has a "problem."

Defendant admitted downloading between three to four movies, but had many pictures, because they would download as albums as. opposed to individual images. Defendant continued to deny knowing the videos were transmitted across the P2P network.

A Camden County Grand Jury indicted defendant on count one, second-degree endangering the welfare of a child (maintaining child pornography) on July 27 or 28 or both, 2017, N.J.S.A. 2C:24-4(b)(5)(a)(iii); and count two, committing third-degree endangering the welfare of a child (possession of child pornography) on or about July 28, 2017, N.J.S.A. 2C:24-4(b)(5)(b). On March 7, 2019, defendant's jury trial began, and on March 13, 2019, the trial court granted the State's motion to amend the indictment. In count one, the date of the offense was changed from July 27 or 28 or both, 2017, to June 27 or 28 or both, 2017.

At trial, Robinson was the only State witness; he catalogued the forensic information from defendant's computer, noting the sixty-six search queries that

were found on defendant's laptop. These included "Siberian Mouse," "[M] titles" and "LS Magazine," a "known child pornography image set." They also included terms for explicit sexual acts, with the words "young teen" attached. "[M.B.]" is one of the young women in the pictures and videos, who defendant also specifically searched for.

Robinson testified defendant used a "cleaner" for his computer 170 times, although some cleanings may be reported twice. Robinson then went through the pictures individually, noting the "hash value," or unique electronic identifier, and any defining characteristics, such as a "LS Magazine" logo. In his defense, defendant had six character witnesses testify, noting he had put together golf outings, had a peaceful demeanor, and took good care of his mother and sister.

The jury found defendant guilty on both counts. The court sentenced defendant to an aggregate term of seven years, to be served concurrently, parole supervision for life, a required blood draw for DNA profiling pursuant to N.J.S.A. 53:1-20.22, and he was ordered to comply with Megan's law, N.J.S.A. 2C:7-2.

8

On appeal, defendant first argues the court erred by granting the State's motion to amend count one of the indictment, during trial to correct a clerical error under Rule 3:7-4. Defendant argues he was deprived of an opportunity to mount a defense for the amended date. The court granted the State's application, finding the time of the offense was not essential for this particular offense and that there would be no prejudice to the defendant given that the expert reports all indicate that June 28, rather than July 28, was the actual date of the first offense.

Rule 3:7-4 provides:

> The court may amend the indictment or accusation to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits. Such amendment may be made on such terms as to postponing the trial, to be had before the same or another jury, as the interest of justice requires.

The New Jersey Supreme Court has interpreted this rule to prohibit courts from amending the indictment if the error to be corrected relates to the substance or "essence" of an offense. State v. Dorn, 233 N.J. 81, 94 (2018) (first quoting State v. Middleton, 299 N.J. Super. 22, 34 (App. Div. 1997); and

9

then citing Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 3:7-4 (2018)). Furthermore, a court cannot amend an indictment where it would prejudice a defendant. <u>Ibid.</u> Defendant argues the amendment denied him the opportunity to put on a meritorious defense. Having reviewed the trial court's decision to amend the indictment under the abuse of discretion standard, <u>State v. Reid</u>, 148 N.J. Super. 263, 266 (App. Div. 1997), we discern no error in failing to accept defendant's bald assertion in order to disallow the amendment.

Defendant asserts his situation is similar to that of the defendant in <u>Middleton</u>, 299 N.J. Super. at 22. There, Middleton was indicted for certain offenses occurring on July 23, at 12:30 p.m., when in reality, the offenses occurred at 12:30 a.m. <u>Id.</u> at 28. Middleton had prepared alibi witnesses and built a trial strategy around the witnesses he intended to call. <u>Ibid.</u> In that light, we held:

> The burdens placed on the defense were then grievously exacerbated when the State's first witness testified to a time of the crime completely contrary to the time for which, to the prior knowledge of the court and the prosecutor, the defendant, defense counsel, and defense investigator were all scurrying around during trial attempting to establish the alibi. At that point, and in view of defendant's assertion that he could also establish an alibi for the "new" time, the interests of justice demanded that he be afforded a reasonable opportunity to do so. That opportunity was not afforded. The interests at stake are too significant

A-0240-19

to require a defendant accused of serious crime to prove his defense on the fly while the State keeps changing the ground rules. Consequently, a continuance or even the declaration of a mistrial with defendant's consent was then appropriate.

[Id. at 34-35.]

Here, defendant's position is not similar to the material facts in Middleton. Defendant did not argue a date-specific defense and took no exception to Robinson's testimony that he downloaded the video from defendant's computer on June 28. Indeed, defendant simply argued he never intended to download the material at all. Additionally, defendant's six character witnesses' testimony had no temporal link to his charges, only to his general reputation and their experiences with him.

III.

Defendant's arguments under Points II, III and V, require us to utilize a plain error standard of review, as "[w]hen a defendant fails to object to an error or raise an issue before the trial court, we review for plain error. We may reverse on the basis of unchallenged error only if the error was 'clearly capable of producing an unjust result.'" State v. Ross, 229 N.J. 389, 407 (2017) (quoting R. 2:10-2). "The possibility of an unjust result must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it

11

otherwise might not have reached.'" Ibid. (quoting State v. Williams, (Williams I), 168 N.J. 323, 336 (2001) (quoting State v. Macon, 57 N.J. 325, 336 (1972))). We discern no such error in the record.

Defendant argues admitting evidence of his attempts to download additional child pornography between July 13 and 22, 2017, was improper, as was evidence related to his use of a file cleaner after the amended date. To reach this conclusion, he relies on State v. Pickles, 46 N.J. 542 (1966), which prevents the State from presenting evidence not referenced in the indictment. We reject his argument. In Pickles, two parents were charged with criminal neglect and manslaughter, when the mother, specifically, placed her four-year-old son in hot water to punish him, but caused his death. Id. at 548-49. There, the defendants were substantially prejudiced when the State attempted to usurp the dates provided in the indictment by referencing the bill of particulars. Id. at 550. The only witness who testified in the trial about incidents occurring within the dates reflected in the indictment, referred to incidents that occurred a year earlier, unfairly surprising defendants. Id. at 563.

Here, defendant was not surprised by the evidence. There was no objection raised when Robinson testified outside the indictment time frame.

12

Nor did defendant argue the evidence was not relevant or probative. And had defendant objected, there remained adequate grounds to admit the evidence.

Whether uncharged conduct is "intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly [N.J.R.E.] 403" or whether it "relates to 'other crimes,' and thus is subject to analysis under [N.J.R.E.] 404(b)," such may be admissible. State v. Rose, 206 N.J. 141, 179 (2011). If the evidence falls within N.J.R.E. 404(b)'s requirements, its admissibility is determined under the four-part test established in State v. Cofield:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [127 N.J. 328, 338 (1992).]

In Rose, 206 N.J. at 180, the Court limited the scope of intrinsic evidence to the two categories established in United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010). "First, evidence is intrinsic if it 'directly proves'

A-0240-19

the charged offense." Rose, 206 N.J. at 180 (quoting Green, 617 F.3d at 248-49). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" Ibid. (quoting Green, 617 F.3d at 248-49).

First, the evidence of the other crime must be relevant to a material issue. Cofield, 127 N.J. at 338. Here, defendant's searches for various child pornography, while cleaning his computer to remove any relevant files, was still relevant to count two, charging him with possession of the child pornography. Under factor two, "it was similar in kind and reasonably close in time to the offense charged." Cofield, 127 N.J. at 338. In this case, defendant acknowledged he was aware of the P2P download date, as the interviews discussed the timeline of events during his interview at the station:

> ROBINSON: So over the course of the three or four weeks, whatever it was that you had these programs on or off your computer, about how many videos or images of child pornography, that you think was child pornography did you download? Ten, [twenty], [thirty]?
>
> DEFENDANT: With the videos maybe a few, maybe like three of them, maybe four.
>
> ROBINSON: Pictures?
>
> DEFENDANT: The pictures were a lot. Like I said when they come in they come in in a big group.

14 A-0240-19

Additionally, proof of defendant's possession of child pornography on the date of July 27 or 28 is still relevant. And the three or four weeks leading up to defendant's arrest provided foundation for his acquisition of the one-hundred-plus pieces of material.

The third Cofield factor requires that "[t]he evidence of the other crime must be clear and convincing." 127 N.J. at 338. In this case, referring to count two as the "other crime," it was clear and convincing that his use of the torrent program and repeated searches allowed him to build his illicit collection. And finally, "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Ibid. The nature of how defendant conducted his searches, and his patterns, was probative to the issue of whether defendant had accessed and obtained the explicit material.

In sum, because defendant did not raise this objection at trial, and because there were valid reasons for the evidence to be admitted, including to prove the second count under N.J.R.E. 404(b) if he had objected, we discern no error by the trial court.

IV.

Next, defendant argues the assistant prosecutor elicited highly prejudicial testimony from Robinson and improperly focused on defendant's

15

bad acts during summation. "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)); State v. Williams, (Williams II), 113 N.J. 393, 447 (1988).

When a defendant raises prosecutorial misconduct for the first time on appeal, our concern is "whether the remarks, if improper, substantially prejudiced the defendant['s] fundamental right to have the jury fairly evaluate the merits of [his or her] defense, and thus had a clear capacity to bring about an unjust result." State v. Johnson, 31 N.J. 489, 510 (1960). Even where a prosecutor has been guilty of misconduct, reversal of a defendant's conviction is not necessary unless the conduct was so egregious that it deprived the defendant of a fair trial. State v. Wakefield, 190 N.J. 397, 438 (2007) (quoting State v. Smith, 167 N.J. 158, 181 (2001)).

In State v. Williams, our Supreme Court recently reaffirmed the core factors required to find reversible error due to prosecutorial misconduct: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether

16

the court ordered the remarks stricken from the record and instructed the jury to disregard them." 244 N.J. 592, 608 (2021) (internal citations omitted).

First, defendant argues the assistant prosecutor should not have elicited testimony from Robinson regarding how he was familiar with the particular girls in the video. From defendant's perspective, the child pornography depicted in this video and the girls being abused inflamed the jury and was irrelevant, as he notes how others have downloaded it, and that was how he gained his familiarity. But on our review of the record, the prosecutor's arguments were based on the facts of the case and reasonable inferences therefrom, and thus, "afford no ground for reversal." Smith, 167 N.J. at 178 (quoting Johnson, 31 N.J. at 510) (internal citations omitted).

V.

Next, defendant argues it was impermissible to question Robinson about whether those who view child pornography typically gratify themselves sexually while doing so. In this regard, the court charged the jury on what a prohibited sexual act was: "[a] prohibited sexual act means . . . nudity, if depicted for the purpose of sexual stimulation or gratification of any person who may view such depiction." Indeed, Model Jury Charges (Criminal), "Endangering the Welfare of a Child (Pornography) (N.J.S.A. 2C:24-

17

4(b)(5)(a)(iii))" (approved Sept. 2014) reads: "[a] prohibited sexual act means . . . nudity, if depicted for the purpose of sexual stimulation or gratification of any person who may view such depiction." Therefore, defendant cannot claim the question of whether an accused is sexually gratified while viewing child pornography is irrelevant to the charges in the indictment. Based on the model charge for defendant's first count, it was necessary to discuss gratification to prove all elements of the crime to the jury.

Defendant also argues the prosecutor purposely and pointedly inflamed the passions of the jury. He points to the State's summation, wherein the prosecutor stated:

> This is a case, and I want to emphasize at this point the victims in this case. I want to emphasize that these are . . . charges of endangering the welfare of a child, children, and that's what this case is about. It's about children and it's about children who are put in jeopardy and in danger by the actions of this defendant and others that commit crimes of this nature.
>
> . . . .
>
> And again so that's another -- this defense comes back or these attempted defenses come back as, well, what about the [P2P]. I didn't understand. I had no idea. He says this over and over again. I have no idea. Again, mind you, a . . . contractor for the federal government, somebody who knows enough to find a [torrent file], who even knows what a [torrent

18

program] is, has enough savvy to have a cleaning program on his computer and yet doesn't understand that the [P2P], how a [P2P] program works. Does that make any sense? I submit to you it doesn't.

. . . .

He deleted the pornography so he could not be caught.

. . . .

Sixty-six separate searches, searches, not search terms that -- let's be straight about this.

. . . .

July 1st, 2017, one search. July 12th, 2017, eight searches. July 13th, 2017, one day later, one search. Two days later, July 15th, 2017, six searches. July 17th, 2017, one search. July 18th, 2017, eight searches. July 20th, 2017, four searches. July 22nd, 2017, three searches and then there are three additional searches that didn't have a date that was assigned or attached to it in the forensic extraction.

Sixty-six different times this defendant searched for this Siberian Mouse video or something related to the Siberian Mouse video, child pornography, and you're to believe that this was an accident, this was a mistake.

. . . .

What did he download from the [t]orrent? You heard Sergeant Robinson explain this to you from the forensic extractions. Siberian Mouse Pack. Pack. It had a number of things in it. He talked about what [a] pack usually ha[s]. It's a bunch of pictures, images,

19

videos, stuff like that. How many times did he download it and when? July 13th, downloaded the whole pack. July 19th, downloaded the whole pack. July 20th, downloaded the whole pack again. July 22nd, downloaded the whole pack a fourth time. And that's only [w]hat we know about because we don't have all of it because the defendant deleted it. Not a mistake.

Under Smith, a prosecutor must "confine [his or her] comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence," as here. 167 N.J. at 178 (citing Frost, 158 N.J. at 86; State v. Marks, 201 N.J. Super. 514, 534 (1985)). But "if a prosecutor's arguments are based on the facts of the case and reasonable inferences therefrom, what is said in discussing them, 'by way of comment, denunciation or appeal, will afford no ground for reversal.'" Ibid. (quoting Johnson, 31 N.J. at 510). Here, the State's comments were during the closing and were made directly after summarizing evidence. Thus, we discern no clear capacity to bring about an unjust result.

VI.

Finally, defendant argues his sentence is excessive. Defendant contends the six character witnesses he presented showed he was an otherwise law-abiding and upstanding citizen. He argues the court erred finding aggravating

20

factor three under N.J.S.A. 2C:44-1(a)(3) and giving moderate weight to the risk of defendant committing another offense.

We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). As directed by the Court, we must determine whether:

> (1) [T]he sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.
>
> [Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Our review of a sentence is limited. State v. Miller, 205 N.J. 109, 127 (2011). Our basic responsibility is to assure that the aggravating and mitigating factors found by the judge are supported by "competent, credible evidence in the record." Ibid. (quoting State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting Roth, 95 N.J. at 364-65)). Defendant's arguments are belied by the record, which supports the court's finding that it is likely that defendant would commit a similar offense. State v. O'Donnell, 117 N.J. 210, 215 (1989). Defendant conceded he has a "problem" viewing children as sexual objects.

21

We disagree with defendant's assertion that the court impermissibly double counted by using the elements of the offense to find aggravating factor nine, which focuses on a need to deter offenders and the general public from committing the same offenses. N.J.S.A. 2C:44-1(a)(9). Although "[e]lements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime," State v. Lawless, 214 N.J. 594, 608 (2013) (citations omitted), a court "does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense," State v. A.T.C., 454 N.J. Super. 235, 254-55 (App. Div. 2018) (citing Fuentes, 217 N.J. at 75). Here, the judge properly found aggravating factor nine based on a "pragmatic assessment of the totality of the harm inflicted by the offender on the victim." State v. Kromphold, 162 N.J. 345, 358 (2000).

The known child victim in this case presents compelling evidence of the harm defendant inflicted. Robinson noted "[M.] is also known as [M.B.]. She's one of the girls that's featured in a lot of these Siberian Mouse videos." And even more:

> PROSECUTOR: Are there specific names of individuals or that are searched in the queries?
>
> ROBINSON: Yes.

22

PROSECUTOR: What, if any, names, specific names are searched in the queries?

ROBINSON: [M] is one in particular.

. . . .

ROBINSON: "[t]hat's an image of [M.B.] who's present in the Siberian Mouse video that we downloaded [from defendant] on June 27th, 2017.

This form of physical, emotional, and psychological harm is not an element of the offenses for which defendant was convicted.  The sentencing court's careful attention to this type of harm does not constitute double-counting.  A.T.C., 454 N.J. Super. at 254-55

Defendant also argues the court erred when it failed to find mitigating factors eight, nine, ten, and eleven.  N.J.S.A. 2C:44-1(b)(8) to (11).  For factors eight to ten, defendant asserts his age, caring for his family and clean criminal record militate a finding of those factors.

Defendant also contends it was an abuse of the trial court's discretion to find that mitigating factor eleven did not apply.  He argues "[t]here was ample evidence that the defendant's elderly, cognitively impaired mother and institutionalized, mentally ill sister would suffer excessive hardship if the appellant were imprisoned."  The judge placed adequate reasons to reject the

application of those mitigating factors on the record, finding defendant's situation no different than any other defendant who has familial obligations.

Defendant's remaining arguments attacking the legal viability of the sentence imposed by the trial court lack sufficient merit to warrant further discussion in a written opinion. <u>Rule</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-0240-19