**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2532-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DARIUS D. BRIDGES,
a/k/a SANTANA SIMMIE,

     Defendant-Appellant.

_____

Argued December 13, 2023 – Decided March 13, 2024

Before Judges Accurso and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 17-03-0317.

Kelly Anderson Smith argued the cause for appellant.

Regina M. Oberholzer, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Regina M. Oberholzer, of counsel and the brief).

PER CURIAM

Defendant Darius Bridges appeals from an order denying his post-conviction relief (PCR) petition without an evidentiary hearing based on ineffective assistance of counsel. Having considered the record and the parties' arguments in light of the applicable legal principles, we affirm.

Following his conviction for first-degree murder and weapons offenses for which he was sentenced to life in prison, defendant filed a direct appeal. We affirmed defendant's conviction and sentence, and the Supreme Court denied certification. State v. Bridges, No. A-3146-17 (App. Div. 2019), cert. denied, 240 N.J. 409 (2020).

Defendant subsequently filed a pro se PCR petition which was later supplemented by PCR counsel, alleging ineffective assistance of trial and appellate counsel. Following oral argument on the PCR petition—there was no evidentiary hearing—Judge Mark P. Tarantino issued a written opinion denying the petition in its entirety. Defendant appeals.

I.

We previously summarized the facts underlying defendant's conviction in our decision on his direct appeal. Bridges, No. A-3146-17, slip op. at 2-6. We restate only those facts pertinent to the issues raised in this appeal.

On November 25, 2016, defendant drove his 1999 Honda Accord to the intersection of York and East Federal Streets in Burlington City to sell drugs to Timothy Stevens. Stevens testified at trial that the murder victim, Howard Young, was known to defendant as How or Howie. On the day of the murder, Young approached defendant and Stevens and told Stevens to "get out of [the area] because it was gonna be a problem there." Defendant later told police detectives in a videotaped statement that Young had warned him not to sell drugs in Burlington City and that if defendant did not leave, "he would get some smoke," meaning he would be shot. After Young left, defendant and Stevens returned to their respective vehicles and drove away. This exchange was captured on Burlington City surveillance video cameras.

Approximately forty minutes later, a different surveillance video camera captured a vehicle similar in color and style to defendant's Honda Accord returning to the area. That same video footage showed a male driver exit the car, raise the hood of his sweatshirt, walk towards the intersection of York and East Federal Streets where he drew a handgun and fired in the direction of the same building that Young had been walking towards after meeting with defendant and Stevens.

3

During the police investigation, defendant viewed the surveillance video and positively identified the Honda Accord as his. At his interrogation, defendant "began threatening to physically harm the officers," which he now avers was because he "perceived that law enforcement were manipulating questions."

At trial, several witnesses testified, including Terrance Johnson, James Chambers, Davon Jones, and Kamiyah Hicks—the victim's cousin. Johnson testified he heard a man shout, "Yo, How" from across the street and when he turned toward the voice, he saw a "guy standing there, raise his arm and start firing . . . [a] gun." After hearing the seven shots, Johnson ran across the street in the direction of the shooter. He observed the shooter jump in a black Nissan or a Kia with a spoiler and drive away. Howard Young was found lying on the ground with a gunshot wound to his back.

Chambers testified he also heard gunshots while inside a nearby auto-repair shop located a block-and-a-half away from the shooting. This witness testified that on hearing the shots, he ran to the front of the shop and observed a male running toward him wearing all black and carrying a silver handgun. Chambers watched the male run to a 2000 black two-door Honda Accord or Prelude with a spoiler. He did not see the shooter's face but was able to identify

4

defendant's car from the surveillance video as the same car he observed the shooter get into after the shooting.

Another witness, Jones, who grew up with defendant in Burlington County, later identified the male seen in the surveillance video as defendant, "by his walk" and "[t]he way he carrie[d] his leg, like it's injured. So he got a little limp to it [] like galloping," Jones testified the Honda in the video was "associated" with defendant. Defendant would later argue that Jones was the "single most important witness offered by the State."

Hicks testified that while at defendant's New Year's Eve party after the shooting, she heard defendant say, "smokin on that nigga Howie," which she stated "[is] a form of disrespect, but I took it as though he did [the shooting]." She also testified defendant's statement made her upset, causing defendant to speak with her. According to Hicks, defendant told her "that he was in Burlington and he was trying to serve his fiends and how [Young] told him that if he not from Burlington that he can't bust his traps out there. And then when he said that Howie pulled the gun out on him."

The PCR judge rejected defendant's arguments that trial counsel was ineffective for failing to challenge Jones' identification of him from a surveillance video and failing to raise alleged inconsistent statements regarding

5

Jones' familiarity with defendant and his supposed knowledge of how he walked, stating "[d]efendant's arguments in this regard are not entirely factually accurate or persuasive. Trial counsel spent considerable time refuting this witness, by his questioning and during his closing arguments to the jury." The court also noted, "[t]here were actually no material inconsistencies in Jones' statements and testimony." The PCR judge also found the argument that trial counsel was ineffective by not presenting defendant's medical records, which defendant argued would challenge Jones' testimony about defendant's gait or limp to be unpersuasive.

Regarding defendant's argument that trial counsel erred by failing to object to evidence that defendant was in the area prior to the shooting to sell narcotics, the court noted "[m]ost important, the trial judge did not consider Cofield[1] factor two in his analysis, so not objecting to that factor being considered did not make any difference," and the Appellate Division previously upheld the trial court's decision, finding no error on the issue.

---

[1] In State v. Cofield, the Court held the admissibility of evidence under Rule 404(b) requires that: "1. The evidence of the other crime must be admissible as relevant to a material issue; 2. It must be similar in kind and reasonably close in time to the offense charged; 3. The evidence of the other crime must be clear and convincing; and 4. The probative value of the evidence must not be outweighed by its apparent prejudice." 127 N.J. 328, 338 (1992).

As to defendant's claim that he is entitled to an evidentiary hearing on his petition, the court concluded that defendant's allegations of inadequate representation are too vague and speculative to warrant an evidentiary hearing. See State v. Marshall, 148 N.J. 89, 158 (1997).

Defendant presents the following points and arguments for our consideration:

> POINT I
> THE TRIAL COURT DENIED DUE PROCESS BY FAILING TO PROPERLY CONDUCT AN EVIDENTIARY HEARING AS TO DEFENDANT'S ISSUES RAISED IN HIS PCR PETITION AND BRIEF
>
> POINT II
> THE PCR COURT ERRED BY FAILING TO CONSIDER ALL OF DEFENDANT'S ARGUMENTS
>
> POINT III
> COUNSEL'S CUMULATIVE ERRORS RESULTED IN A MANIFEST INJUSTICE

## II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. We may "conduct a de novo review" of the court's "factual findings and legal conclusions" where the PCR court has not

A-2532-21

conducted an evidentiary hearing.  Id. at 421; see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020).

In our analysis of an order denying a PCR petition asserting ineffective assistance of counsel, we apply the two-part standard established in Strickland v. Washington, 466 U.S. at 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel.  To satisfy the standard's first prong, a petitioner must show counsel's performance was deficient by demonstrating counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687-88.

Under the "second, and far more difficult prong," of the Strickland standard, State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "must show that the deficient performance prejudiced the defense[,]" State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687).  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is

a probability sufficient to undermine confidence in the outcome." Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694). Proof of prejudice under Strickland's second prong "is an exacting standard." Id. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). A defendant seeking PCR "must affirmatively prove prejudice" to satisfy the second prong of the Strickland standard. Ibid. (quoting Strickland, 466 U.S. at 693).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both prongs of the Strickland standard. 466 U.S. at 687; State v. Nash, 212 N.J. 518, 542 (2013). A failure to satisfy either prong requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700. "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citations omitted).

Defendant now argues—as he did about trial counsel on direct appeal— that both trial and appellate counsels' performances were deficient as both conceded that the second prong of the Cofield analysis[2] was met; specifically,

---

[2] In State v. Green, the Court held the application of the second Cofield factor for admissibility of evidence under Rule 404(b), that "[i]t must be similar in

that the evidence related to defendant's interrupted drug transaction preceding the shooting was similar in kind and reasonably close in time to the offense charged. Although we found trial counsel's concession of the second prong of Cofield analysis was not error on direct appeal, Bridges, No. A-3146-17, slip op. at 9 n.4, defendant now asserts that trial and appellate counsel provided ineffective assistance by not challenging the admissibility of the earlier drug transaction which was offered to show motive for the murder.

Defendant argues the PCR court erred in denying his petition by failing to consider his medical records that "evidenced no history of injury" to his leg to contradict Jones' critical identification testimony that he recognized defendant from the surveillance video as one who walked as though he had a limp. Defendant maintains that Jones became the "single most important witness offered by the State" because of the lack of other evidence, including fingerprints, ballistics, DNA, eyewitnesses to the shooting, and the absence of a weapon. Defendant asserts trial counsel's failure to attack the credibility of

---

kind and reasonably close in time to the offense charged," 127 N.J. at 338, is "limited to cases that replicate the circumstances in Cofield." 236 N.J. 71, 83, (2018) (citing State v. Williams, 190 N.J. 114, 131 (2007)).

Jones' identification of him—as the individual on the surveillance video based on his distinctive limp—"rose to the level of ineffectiveness."

As a related matter, defendant also argues counsel failed to "contact and utilize available exculpatory witnesses" and "[t]he PCR court erred by not affording [him] the opportunity to illicit testimonies." Lastly, defendant contends the PCR court erred by failing to consider all of his arguments and by denying him an evidentiary hearing, which he claims was warranted because of the material disputed issues raised in his petition.

In its opposition brief, the State disputes defendant's arguments that the introduction of his medical records would have changed the outcome of the trial "[b]ecause the medical records would not have proven that defendant did not have a limp, they would not have impeached Jones' credibility. Indeed, presenting the records would likely have been detrimental to defendant's case." In support of this argument, the State noted that "defendant provided no reason to believe that the medical records would mention whether he walked with a limp" and "did indicate that defendant did lacerate his lower right leg on a glass table in 2009, requiring stitches."

Additionally, as to defendant's argument that trial counsel failed to call three witnesses identified as Keedi, Jomo, and Morris—by a single name or

nickname—the State contends that defendant "must assert the facts that an investigation would have revealed, supported by affidavits, or certifications based upon the personal knowledge of the affiant or the person making the certification."[3] And that without full names and other identifying information for those yet unidentified witnesses along with affidavits or certifications, defendant cannot satisfy Rule 1:6-6. Additionally, as the State correctly contends even if these yet-to-be-identified witnesses did not hear defendant make the statement to Hicks that he was "smoking on [] Howie" as Hicks—the victim's cousin testified—it "does not establish that he did not make the comment, much less that the content of it was untrue, but only that they did not hear it."

After careful review of the record, we affirm the PCR court substantially for the same reasons set forth in Judge Mark P. Tarantino's well-reasoned decision. We are first and foremost persuaded defendant failed to set forth a prima facie showing of ineffective assistance of trial and appellate counsel under Strickland. As the PCR court stated, "[t]rial counsel extensively cross-examined Jones—the key witness as argued by defendant. Jones was questioned about his

---

[3] See State v. Porter, 216 N.J. 343, 353 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6)).

memory, supposed inconsistent statements, and his firing from the police department." Moreover, we concur with the PCR court that "[t]here were no material inconsistencies in Jones' statements and testimony; Jones may have been vague or non-specific at times, but he did not contradict himself." Thus, defendant's argument that trial counsel was deficient with respect to Jones' cross-examination is not supported by the record, and he has not satisfied the first prong of Strickland.

Similarly, we discern no error in the PCR court's determination that trial counsel did not render ineffective assistance by not presenting defendant's medical records during the trial to show that he did not have a limp. As the State convincingly argues, the medical records referencing a prior right leg injury may have been incomplete, and critically would not have answered the question whether defendant had a limp at the time of the murder. Moreover, trial counsel used the State's failure to introduce medical evidence showing defendant had a limp to defendant's advantage, especially during closing argument when counsel argued the State did not meet its burden on the identification of defendant as the shooter seen on surveillance; thus, defendant's claim of ineffective assistance based on the failure to introduce his medical records is unavailing.

With respect to defendant's argument that trial counsel could have called three other witnesses to refute Hick's testimony that defendant admitted to the murder, we discern no basis to disturb the PCR court's finding on this claim as well. We concur with the court's conclusion that through effective cross-examination, trial counsel was able to elicit that defendant's words to Hicks were not interpreted by her at the time to show that defendant had admitted to killing the victim. We have consistently held that PCR claims must be supported by "an affidavit or certification by defendant or by others setting forth with particularity," the facts upon which they are based. State v. Jones, 219 N.J. 298, 312 (2014).

As the PCR court found, defendant failed to satisfy the first prong of Strickland by providing only partial information about potential witnesses and even the certification from an investigator in the Office of the Public Defender suffers from the same deficiency because it contained only partial names, or nicknames of individuals and does not address what these individuals would have testified to concerning defendant's culpability for these crimes. Thus, the PCR court's rejection of defendant's argument does not constitute error under Strickland as defendant must do more than make "bald assertions" in support of

14

his claims of ineffective assistance of counsel. See Cummings, 321 N.J. Super. at 170.

We likewise reject defendant's claims of ineffective assistance of appellate counsel, where he specifically argues "[a]ppellate [c]ounsel [was] ineffective by 'conceding' that prong (2) two of the Cofield analysis was met," which defendant characterizes as "objectively unreasonable." He further argues that counsel "permitted damaging 'violence' testimony into the case" from his interrogation, where defendant lost his temper and threatened to physically harm the officers.

We have considered many of these same arguments in the context of his claims of ineffective assistance of trial counsel and determined they lack merit. We reach the same conclusion with respect to defendant's claims against appellate counsel substantially for the same reasons: defendant cannot show that appellate counsel's performance was deficient or fell below the applicable standard because, as we have previously noted,"[t]he failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. O'Neal, 190 N.J. 601, 619 (2007); State v. Worlock, 117 N.J. 596, 625 (1990). As the Webster Court stated, "counsel should advance all of the legitimate arguments that the record will support. If after investigation[,]

15

counsel can formulate no fair legal argument in support of a particular claim raised by defendant, no argument need be made on that point." State v. Webster, 187 N.J. 254, 257 (2006). Thus, appellate counsel was not ineffective by failing to challenge the Cofield analysis or admission of the prior drug transaction as motive evidence. Nor was appellate counsel deficient in failing to contest defendant's statements "threatening to physically harm the officers."

Defendant failed to present competent evidence establishing a prima facie PCR claim, and he points to no evidence establishing a dispute as to material facts or a need to consider matters outside the existing record. The PCR court therefore correctly denied the petition without an evidentiary hearing. See Marshall, 148 N.J. at 158.

Any remaining arguments presented on defendant's behalf that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2532-21