605 A.2d 230

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JAMES COFIELD, DEFENDANT–APPELLANT.

Argued January 7, 1992—Decided April 15, 1992.

*Robert L. Sloan,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*Michael J. Williams,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the admissibility of other-crime evidence under *Evidence Rule* 55 to prove a fact in issue other than the propensity of a defendant to commit crime. We hold that the trial court did not abuse its discretion in ruling evidence of a subsequent illegal drug incident to be relevant and admissible for establishing defendant's constructive possession of illegal drugs during an earlier incident that is the subject of this prosecution. We find sufficient similarity between the two incidents involving the same location to demonstrate relevance to prove an element of a crime, not a propensity to commit

crime. However, the trial judge's limiting instruction under *Evidence Rule* 6 directed the jury's attention to the generalities of *Evidence Rule* 55 instead of the facts of this case. We therefore reverse the conviction below because we believe that the absence of a more tailored charge had the clear capacity to bring about an unjust result.

## I

During the evening of August 14, 1985, a Newark police detective received a tip from an informant that narcotics were being sold on South 10th Street, outside The Copa Lounge (the Lounge). The detective investigated the area and saw fifteen people approach defendant or his brother as they stood on the sidewalk outside the Lounge. After the persons talked with defendant or his brother and gave them money, they were directed to a car, registered to defendant's mother, parked in a lot across the street from the Lounge. The people were then seen making "hand-to-hand" contact with the car's occupants and leaving the area.

Through the use of an undercover informant who had talked with defendant, given him money, and crossed the street to receive aluminum-foil packets from the car's two occupants, the detective discovered that the aluminum-foil packets contained cocaine. The following morning, on August 15th, Newark police arrested defendant, his brother, and the two men who had been sitting inside the car parked across the street from the Lounge the night before. When the police arrested defendant, he had $236 on his person and his brother had $144.

After arraignment, defendant was admitted to bail and returned to the streets of Newark to pursue his criminal activities. On September 4, 1985, the same detective who had received the earlier information learned that drugs were again being sold in front of the Lounge. This time, when investigating, the detective saw six people approach defendant and his brother as they stood on the sidewalk in front of the Lounge.

On receiving cash from each of the six people, defendant or his brother would enter the Lounge and then return to the sidewalk in front of the Lounge to make an "exchange" with the person. Following the exchange the person would then leave the area in front of the Lounge.

Again a police informant approached defendant and entered the Lounge with him. When the informant returned to the prearranged location to meet the detective, he said that defendant had given him aluminum-foil packets that defendant had received from two other persons in the Lounge. The packets contained cocaine. The police arrested defendant as well as his two cohorts in the Lounge who had given him the aluminum-foil packets. Following the arrests, detectives recovered 125 aluminum-foil packets containing cocaine, as well as three aluminum-foil packets that defendant had discarded outside the Lounge. Defendant's brother was not charged in the September incident.

Defendant and others were indicted for drug violations for the August 14th and September 4th activities. The second indictment was tried first and resulted in defendant's conviction of conspiracy to distribute drugs. (The jury inexplicably acquitted defendant of the substantive counts of possession for the September 4th activities, but convicted him of conspiracy to commit the same overt acts.)

At an *Evidence Rule* 8 hearing before trial of the August indictment, the State sought leave to introduce the evidence of defendant's September 4th activities. Over defendant's objections, the trial court ruled the other-crime evidence admissible against him under *Evidence Rule* 55, finding the evidence relevant to "other facts * * * in issue such as intent or plan, knowledge."

At trial, the State presented the September 4th other-crime evidence as well as the evidence of the August 14th incident. The court twice reminded the jury of the limited purpose of

other-crime evidence and instructed the jury in accordance with *Evidence Rule* 6:

> Now, you also heard some testimony in this case concerning defendant James Cofield regarding the incident which occurred on September 4, 1985. You will recall that testimony and of course that with other persons on that September 5th who are not here before you. Now, this evidence cannot and should not be considered by you for the purpose of showing Mr. James Cofield's predisposition to commit the crimes for which he is now charged and for which you are now going to consider his guilt or innocence. Is that clear, ladies and gentlemen? All right. Such evidence is admissible and can only be considered by you, ladies and gentlemen, and whether you deem it is credible and worthy of belief for the limited, and I do say limited purpose of proving some other fact in issue.

The jury convicted defendant of conspiracy to violate the drug laws, unlawful possession of a controlled dangerous substance, and unlawful possession with intent to distribute. The trial court merged the possession count with the distribution count and sentenced defendant to concurrent five-year terms of imprisonment for the conspiracy and distribution counts.

In an unreported decision, the Appellate Division merged the conspiracy with the distribution count but otherwise affirmed defendant's conviction. One judge dissented. He believed that the other-crime evidence was inadmissible because it tended to show "no more than defendant's predisposition to sell drugs." He further believed that the trial judge did not properly weigh the probative value of the other-crime evidence in accordance with *Evidence Rule* 4 nor "did he give the required *Evid.R.* 6 limiting instruction." Defendant appealed on the basis of the dissent below. *R.* 2:2–1(a).

## II

■ We have recently reviewed the principles applicable to other-crime evidence under *Evidence Rule* 55. *See State v. Stevens,* 115 *N.J.* 289, 558 *A.*2d 833 (1989). *Evidence Rule* 55 states:

> Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil

wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.

" 'A short version of the rule is [that] " * * * it is not competent to prove one crime by proving another, * * *." ' " *State v. Weeks*, 107 *N.J.* 396, 406, 526 *A.*2d 1077 (1987) (quoting *State v. Toshishige Yoshino*, 45 *Haw.* 206, 364 *P.*2d 638, 642 (1961) (quoting 22A *C.J.S. Criminal Law* § 682 (1961))). The long-form version is: The admissibility of other crimes, wrongs, or acts evidence is determined through an application of *Evidence Rules* 4, 6, and 55. *Stevens, supra,* 115 *N.J.* at 298–304, 558 *A.*2d 833. The evidence must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant, and must be coupled with a limiting instruction. A proper application of those rules balances the State's interest in presenting the evidence of "other crimes or wrongs" against the possibility of unfair prejudice to the defendant.

■ The "inflammatory characteristic of other-crime evidence * * * mandates a careful and pragmatic evaluation by trial courts, based on the specific context in which the evidence is offered, to determine whether the probative worth of the evidence outweighs its potential for undue prejudice." *Stevens, supra,* 115 *N.J.* at 303, 558 *A.*2d 833. Even when other-crime evidence is admissible in entrapment cases to show propensity to engage in specific conduct, we insist on sufficient similarity between the "objects, methods, and particular mental states" as well as the "factual nexus between the crimes" so as not to mislead the jury to focus on a defendant's general bad character. *State v. Gibbons*, 105 *N.J.* 67, 85, 519 *A.*2d 350 (1987).

Although federal decisions suggest a more permissive approach, *see, e.g., Huddleston v. United States*, 485 *U.S.* 681, 108 *S.Ct.* 1496, 99 *L.Ed.*2d 771 (1988) (no requirement of a preliminary finding by the trial court that the prior act had occurred); *United States v. Bayless*, 940 *F.*2d 300, 304 (8th Cir.1991) (prior cocaine sales spanning a three-year period rele-

vant to defendant's conspiracy conviction); *United States v. Poole*, 929 *F.*2d 1476, 1480–81 (10th Cir.1991) (despite lack of specificity in testimony concerning time and date of prior cocaine sales, they were "close in time" and admissible to prove knowledge and intent to distribute), the approach has not been without a price in trial management. The admissibility of uncharged misconduct has been described as "the single most important issue in contemporary criminal evidence law." Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition*, 51 *Ohio St.L.J.* 575, 576 (1990) (Imwinkelried). The analogous Federal Rule of Evidence 404(b) has "generated more published opinions than any other subsection of the Federal Rules * * * [and] errors in the introduction of uncharged misconduct are the most frequent basis for reversal in criminal cases." *Id.* at 577. In this case, use of the other-crime evidence was further complicated by the fact that the evidence was admissible against only one of the defendants, James Cofield, and, in his case, required explanation of an inconsistent verdict. In addition, a co-defendant claimed the need to identify an informant involved in the second incident, whose identity the State had refused to divulge. All of that required extensive pretrial time. Courts do well then to hew closely to the requirements and underlying rationale of the Rule.

## III

### A.

*Evidence Rule* 55 parallels the "prevailing common-law rule throughout the United States." *Stevens, supra*, 115 *N.J.* at 299, 558 *A.*2d 833. The central premise of the broad prohibition under *Evidence Rule* 55 is that

the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial.

[1 *McCormick on Evidence* § 190, at 798 (Strong ed., 4th ed. 1992) (footnotes omitted).]

█ The limited purposes for which other-crime evidence may be admitted include, but are not limited to, "establishment of a common scheme or plan, a signature crime, motive, and most frequently, to impeach the accused who takes the witness stand, but only through a conviction." *Weeks, supra,* 107 *N.J.* at 406–07, 526 *A.*2d 1077; *see, e.g., State v. Erazo,* 126 *N.J.* 112, 130–31, 594 *A.*2d 232 (1991) (prior conviction and sentence admissible to show motive in murder trial); *Stevens, supra,* 115 *N.J.* at 305–06, 558 *A.*2d 833 (other-crime evidence admissible to prove "existence of an integrated plan, of which the other crimes and the indicted offense are components"); *State v. Ramseur,* 106 *N.J.* 123, 265–67, 524 *A.*2d 188 (1987) (evidence of prior crimes admissible to prove intent to commit stabbing).

█ The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is "a 'bad' person in general." *Gibbons, supra,* 105 *N.J.* at 77, 519 *A.*2d 350. Hence, even if the other-crime evidence is relevant to prove some legitimate trial issue, the trial court must still exclude it unless, under *Evidence Rule 4,* its probative value outweighs its prejudicial impact. *State v. Clausell,* 121 *N.J.* 298, 322, 580 *A.*2d 221 (1990); *State v. Lumumba,* 253 *N.J.Super.* 375, 390–91, 601 *A.*2d 1178 (App.Div.1992).

*Evidence Rule 55* is most easily understood in situations of signature crimes, in which some distinct feature about the two crimes clearly allows the jury to make an inference other than propensity to commit crime. For example, the distinctive features of a silver pistol used in a prior crime would be admissible under *Evidence Rule 55* in an unrelated murder trial to establish either the identity of the perpetrator or the weapon used. *See State v. Long,* 119 *N.J.* 439, 475–76, 575 *A.*2d 435 (1990). Another easily understood application of other-crime evidence is in the context of the "doctrine of chances": If the frequency of episodes of cyanotic deaths of children in an accused's care "far

exceeds the national average for such episodes," an absence of accident may be inferred. *Imwinkelreid, supra,* 51 *Ohio St. L.J.* at 587.

## B.

Because of the generic nature of drug transactions, that evidence of prior or subsequent transactions can be introduced without having the jury focus on propensity as the principal issue is less clear. An illustration of an acceptable use of other-drug-crime evidence would be a showing that "a past possessor is more likely to spot marijuana under a chicken coop," and thus would not be an innocent possessor on the later occasion. *United States v. Moccia,* 681 *F.*2d 61, 63 (1st Cir. 1982).

An excellent discussion of the use of *Evidence Rule* 55 evidence in drug cases is set forth in *Harris v. State,* 324 *Md.* 490, 597 *A.*2d 956 (1991). In the *Harris* court's view, by stating the rule in exclusionary terms—evidence of other crime or wrongs is generally not admissible—its framers intended that the focus be on exclusion, not inclusion. "Accordingly, it will be the exceptional, and not the usual, case where the evidence of other bad acts is substantially relevant for reasons other than proof of criminal character." *Id.* at 500, 597 *A.*2d at 961. Thus, Maryland courts ask whether the other offenses " 'show such relation to the main charge, as to make connection obvious' " on an issue other than propensity. *Id.* at 503, 597 *A.*2d at 963 (quoting *Bryant v. State,* 207 *Md.* 565, 115 *A.*2d 502, 511 (1955)). For example, when apartment occupants are charged with constructive possession of drugs, evidence of past possession by one of the occupants will allow the jury to focus on the issue of possession rather than on propensity. In contrast, mere proof that an accused had sold narcotics on another occasion, especially when it is a distantly-related occasion, has no special relevance to the issues. *Id.* at 503–04, 597 *A.*2d at 963–64. Thus, "[t]he other crimes evidence in the instant case

[*Harris* ], showing no more than the sale of a similar controlled dangerous substance two and one-half years before the event in question, possesses no special relevance beyond general criminal propensity and should not have been admitted." *Id.* at 504, 597 *A.*2d at 964.

One of the key measures of such "special relevance" will often be the similarity of the offenses. *See United States v. Wright,* 943 *F.*2d 748 (7th Cir.1991). In *Wright,* the government established that the defendant "had a general plan to distribute crack cocaine in a specific geographic area and * * * execute[d] his plan through third parties who would perform the exchange of crack cocaine for money." *Id.* at 751. Thus, the "other acts" evidence on a date or dates other than the subject date was probative of the general plan. *Ibid.* Moreover, that evidence was " 'similar and close enough in time' to be relevant." *Ibid.* (quoting *United States v. Khorrami,* 895 *F.*2d 1186, 1193–94 (7th Cir.), *cert. denied,* 498 *U.S.* ——, 111 *S.Ct.* 522, 112 *L.Ed.*2d 533 (1990)). *See also State v. Ortiz,* 253 *N.J.Super.* 239, 601 *A.*2d 735 (App.Div.1992) (evidence of drug transactions occurring within one hour of each other held admissible to explain entire plan or conspiracy to distribute cocaine).

▪ Those case-by-case analyses may be distilled into a rule of general application in order to avoid the over-use of extrinsic evidence of other crimes or wrongs:

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Abraham P. Ordover, *Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b), And 609(a),* 38 *Emory L.J.* 135, 160 (1989) (footnote omitted).]

▪ We reemphasize as we did in *State v. Stevens, supra,* 115 *N.J.* at 301, 558 *A.*2d 833, that the material issue must be genuinely disputed. For example, if identity is not really in

issue, as it was not in this case, it would be improper to justify the use of other-crime evidence on that basis. Here, possession was genuinely disputed. With respect to the quality of proof of the other misconduct, it was firmly established in this case by defendant's conviction in the earlier trial.

## IV

■ Missing in the presentation of this case was a clear, initial focus on the purpose for which the other-crime evidence was being offered. At the *Evidence Rule* 8 hearing before trial of the August incident, the State sought to admit other-crime evidence of defendant's September activities for a raft of purposes—absence of mistake, absence of accident, a plan, intent, "what they were up to."

> This [September 4, 1985, activity] wasn't an accident, it wasn't a mistake. They [defendant and his brother] weren't just happening [sic] to be standing in front of the bar that night in August and the police made these observations that they were selling drugs. The fact that they did it again three weeks later shows that they were part of this conspiracy, that they were part of a plan. This was done for a purpose and on purpose. It shows their intent. They are professional drug salers [sic], Judge, and I emplore [sic] you to rule that it can come in for the limited purpose of showing what they were up to, where they were at in the summer of 1985.

In its brief to this Court, the State asserts:

> Evidence as to the subsequent September 4, 1985, crime was admissible in the State's direct case to establish the connection between defendant's August 14, 1985, station outside the Copa Lounge and the drug transactions. This was the nexus for inferring that his [defendant's] August activities tied him to the cocaine in the nearby vehicle and did not constitute mere innocent presence.

At oral argument, the State sharpened its focus to the issue of constructive possession. Although similar, these incidents were not "signature crimes." *See State v. Reldan,* 185 *N.J.Super.* 494, 503, 449 *A.*2d 1317 (App.Div.), *certif. denied,* 91 N.J. 543, 453 *A.*2d 862 (1982) (insufficient similarity between method of strangulation in multiple murders to constitute signature crime). Nor did the conspiracy count embrace the September incident as part of a plan. The parties (other than the Cofield brothers) were different in the two incidents. Although the

question is close, we do not believe that the trial court would have abused its discretion in admitting the other-crime evidence on the issue of defendant's possession with intent to distribute. *See Erazo, supra,* 126 *N.J.* at 131, 594 *A.*2d 232 ("Appellate courts generally defer to trial court rulings on the admissibility of evidence of other crimes, unless those rulings constitute an abuse of discretion.").

Defendant argues that the State may not prove constructive possession (August) by actual possession (September). We disagree. Properly focused, the probative value of the evidence would not have been outweighed by any apparent prejudice. There was a sufficient relevance between the August 14th and September 4th drug transactions because the incidents were identical in location, similar in kind, and connected closely enough in time to allow the jury to make the "obvious connection" with possession, not propensity. *See Harris, supra,* 597 *A.*2d at 963; *see also Meadows v. State,* 584 *So.*2d 953, 956 (Ala.Crim.App.1991) (in prosecution for unlawful possession of marijuana "substantially" similar methods, equipment, and supplies at two locations where marijuana was grown was relevant and admissible to prove knowledge and constructive possession); *State v. Christian,* 237 *Neb.* 294, 465 *N.W.*2d 756, 759 (1991) (evidence of defendant's prior presence at cocaine "cooker" coupled with his "rolling" of joint were admissible and relevant to prove possession of controlled dangerous substance). The order of the events is not dispositive of the issue of relevance. Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 5:27, at 57 (1990). The trial court was justified in admitting the evidence.

## V

However, once the prosecution has demonstrated the necessity of the other-crime evidence to prove a genuine fact in issue and the court has carefully balanced the probative value of the evidence against the possible undue prejudice it may create, the

court must instruct the jury on the limited use of the evidence. *Evid.R.* 6. In *Stevens*, we explained that because "the inherently prejudicial nature of such evidence casts doubt on a jury's ability to follow even the most precise limiting instruction," 115 *N.J.* at 309, 558 *A.*2d 833, the court's instruction "should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." *Id.* at 304, 558 *A.*2d 833.

We thus emphasized that a court should not state generally the content of *Evidence Rule* 55, but should "state specifically the purposes for which the evidence may be considered and, to the extent necessary for the jury's understanding, the issues on which such evidence is not to be considered." *Id.* at 309, 558 *A.*2d 833. The trial court's instruction to the jury here merely restated the general provisions of *Evidence Rule* 55 without focusing the jury's attention on finding constructive possession based on the evidence of the September 4th incident. Because that instruction failed to "clarify for the jury the narrow distinction between the permissible and impermissible uses of the other-crime evidence," *id.* at 308–09, 558 *A.*2d 833, the charge was inadequate.

The issue arises here as one of plain error, however, because trial counsel did not object to the trial court's instruction. Plain error is reversible if it is " 'clearly capable of producing an unjust result.' " *State v. Hunt*, 115 *N.J.* 330, 363, 558 *A.*2d 1259 (1989) (quoting *R.* 1:7–2 and *R.* 2:10–2).

The court's instruction here did not narrowly focus the jury's attention on the *specific* use of other-crime evidence, but instead made reference only to the generalities of the Rule. We have said that "more is required to sustain a ruling admitting such evidence than the incantation of the illustrative exceptions contained in the Rule." *Stevens, supra*, 115 *N.J.* at 305, 558 *A.*2d 833. The trial court's failure to focus the jury's attention

on the limited purpose for which the evidence was admissible allowed the jury such free rein that it was clearly capable of confusing propensity with possession. In addition, the co-defendants, including defendant's brother, used that evidence to point the finger of guilt at defendant, calling him the "dope pusher" and portraying themselves as innocent bystanders.

Because the trial court's instruction did not cure the prejudicial impact of the other-crime evidence the error was clearly capable of producing an unjust result.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for further proceedings in accordance with this opinion.

STEIN, J., concurring.

I concur in the Court's judgment reversing defendant's conviction and agree with much of the Court's reasoning. I write separately because in my view no limiting instruction, no matter how meticulously phrased, can offset the devastatingly prejudicial impact of the proffered *Rule* 55 testimony. See *Evid.R.* 4.

The Court correctly observes that the evidence of defendant's September drug-related activities on the sidewalk outside of the Copa Lounge was relevant on an issue materially disputed in the prosecution of the August offense—the issue whether defendant constructively possessed the drugs found in the car parked across the street from the Lounge. Presented with testimony of defendant's September drug-related activities outside the Copa Lounge, a jury could reasonably infer that defendant's presence on the sidewalk in August was also drug-related, leading to the conclusion that defendant exercised dominion over the drugs found in his mother's car.

The difficulty arises when a trial court attempts to explain to a jury that it may consider evidence of the September event only on the issue of defendant's constructive possession of the drugs found in connection with the August incident, but not on

the issue of defendant's propensity to possess and distribute drugs. That required explanation would either be incomprehensible to the average juror or, if understood, incapable of application. The minds of jurors are not divided into sealed compartments. The conceptual separation contemplated by the mandatory limiting instruction is *too subtle to be achieved* by any jury. Presented with evidence that this defendant sold drugs outside the same bar on September as he allegedly did in August, the jury's ultimate determination of guilt will be inevitable, and neither the judge nor the jurors will know whether the subtle distinction carefully outlined in the limiting instruction was considered or, more likely, disregarded. As one commentator explains: "The theory of 'limited use' under which such explosive evidence is put before the jury fails to correspond to the actual effect of the evidence even in the minds of the most sober and conscientious jurors." H.R. Uviller, *Evidence of Character to Prove Conduct: Illusion, Illogic and Injustice in the Courtroom*, 130 *U.Pa.L.Rev.* 845, 882 (1982).

This is precisely the kind of *Rule* 55 evidence referred to by the Court in *State v. Stevens*, 115 *N.J.* 289, 558 *A.*2d 833 (1989), in which we observed: "[the] inflammatory characteristic of other-crime evidence * * * mandates a careful and pragmatic evaluation by trial courts, based on the specific context in which the evidence is offered, to determine whether the probative worth of the evidence outweighs its potential for undue prejudice." *Id.* at 303, 558 *A.*2d 833.

Because the undue prejudice of the *Rule* 55 evidence substantially outweighs its probative value, I would require the State to prove its case without it.

Justice STEIN concurring in result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and STEIN.—7.

*For affirmance*—None.