# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3811-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HIRAM A. CELESTINE,
a/k/a LEROY JOHNSON,
LEROY A. JOHNSON,
ANDY JOHNSON,
ANDRE FOSTER,
ANDRE JOHNSON,
ANDRE JONES,
DIAMOND SIMS,
ANDRE JOYNER,
HIRAM CELSTINE,
HIRAM CELESTINE,
HIREN CELESTINE, and
CURTIS L. BEATON,

    Defendant-Appellant.

_____

Submitted March 10, 2026 – Decided March 25, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-03-1025.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Anthony J. Vecchio, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Maura M. Sullivan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Hiram Celestine appeals from a June 26, 2024 order denying his second petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant argues his trial counsel was ineffective because trial counsel: failed to move to sever count seven on the indictment—the first-degree aggravated sexual assault charge—from the statutory rape counts; failed to investigate his alibi defenses; and failed to move to suppress his statement made to Camden County Prosecutor's Office Detective Amy Pisano, which led to his indictment. Defendant contends his first PCR counsel failed to raise these arguments. We disagree and affirm.

I.

We assume the reader's familiarity with the facts that supported defendant's conviction, which we reviewed in detail in affirming his conviction and sentence on direct appeal, State v. Celestine, No. A-3804-14 (App. Div. May 8, 2017), certif. denied, 231 N.J. 99 (2017), and affirming denial of his first PCR

2                                                                    A-3811-23

petition, State v. Celestine, No. A-1238-19 (App. Div. Nov. 8, 2021), certif. denied, 251 N.J. 206 (2022). On March 12, 2020, defendant filed a second PCR petition. On February 5, 2021, the PCR court dismissed defendant's second PCR petition without prejudice after receiving defendant's notice of appeal from the denial of his first PCR.

On February 1, 2023, defendant refiled his second PCR petition after we affirmed denial of his first PCR petition, and the Supreme Court denied certification. In his self-represented second PCR petition, defendant first alleged his trial and first PCR counsel were ineffective for failing to investigate his alibi defense. Specifically, defendant contended the owner of the Riviera Motel in Pennsauken, David Roth, could have testified at trial that defendant was not present at the motel during the sexual assault. Defendant asserted the investigator retained by his first PCR counsel—Alethea Alston—did not contact the Riviera Motel until eleven years later when its records were no longer available. Alston's report was completed on June 18, 2019.

Second, defendant contended his trial and first PCR counsel were ineffective for failing to adequately investigate or present evidence at trial that he was working at McDonald's in Brooklyn every day in September until his arrest, with the exception of two days. Defendant alleged trial and first PCR

3

counsel could have obtained a check cashing record to verify he was in Brooklyn on the date of the alleged sexual assault. Defendant also maintained an exhibit used to refresh his recollection as to the days he worked at McDonald's should have been moved into evidence to establish an alibi defense.

Third, defendant alleged trial and first PCR counsel failed to subpoena timecards and other records from Violet Packing Company, where he was employed in 2010. Defendant contended his timecards would have established he was not with the victim during the periods she alleged they engaged in sexual relations when she was under the age of sixteen.

Fourth, defendant argued his trial counsel was ineffective because he failed to file a motion to sever count seven, the aggravated sexual assault count, from the statutory rape charges, which resulted in prejudice.

In his second supplemental certification in support of his second PCR petition, defendant claimed he was held in the Camden County jail for making terroristic threats against the victim and resisting arrest. While in custody, defendant contended he was not informed he was being questioned in connection with a filed criminal complaint that charged him with sex offenses and was wrongfully questioned without his attorney present. Defendant alleged he was prejudiced because he was not truthful in his statement to Detective Pisano.

A-3811-23

According to defendant, trial counsel was ineffective for not filing a motion to suppress his statement, and the outcome would have been different if the prosecutor and trial court had not told the jury he lied to the police.

On April 17, 2024, the second PCR court conducted oral argument. On June 26, 2024, the court denied defendant's petition in an oral decision. The second PCR court addressed the merits of defendant's claims and determined that he failed to establish by a preponderance of the evidence a prima facie case of ineffectiveness of trial or first PCR counsel.

The second PCR court rejected defendant's first argument, reasoning that although Investigator Alston's report supported defendant's claim he was not with the victim at the alleged times, neither her June 18, 2019 report nor her certification proved the dates defendant was at the Riviera Motel. The court emphasized that on August 28, 2023, a second investigator, Milagros Guzman from the Office of the Public Defender (OPD), prepared a report and also concluded the Riviera Motel records did not exist.

The court rejected defendant's second argument, finding Alston's and Guzman's reports confirmed defendant's period of employment at a McDonald's in Brooklyn, and he worked at that location every day in September 2012, with the exception of September 6 and 11, until his arrest. The court reasoned that

5

since Alston's report did not identify any specific dates defendant worked, and Guzman's report indicated he was unable to obtain information about the specific days defendant worked, the check cashing records would not have shown defendant was in Brooklyn on September 6.

As to defendant's third argument, the court reiterated that neither investigator's report identified any dates defendant specifically worked at Violet Parking Company. The court rejected defendant's fourth argument finding severance of count seven in the indictment—first-degree aggravated sexual assault—from the remaining statutory rape counts would not have been granted if trial counsel had filed a motion to sever.

The court determined trial counsel's decision not to file a motion to sever was a matter of trial strategy and first PCR counsel was not ineffective thereby. The court stated:

> complaints merely of matters of trial strategy will not serve as a ground for claims of constitutional inadequacy, State v. Fritz, 105 [N.J.] 42, 54 (1987). Prejudice is not presumed[.] [I]d. at 52. A defendant must demonstrate how specific errors of counsel undermine the reliability of the proceedings[.] United States v. Cronic, 466 U.S. 648, 659 (1984).
>
> Trial strategy that fails to obtain the optimal outcome for a defendant is insufficient to show that [c]ounsel was ineffective[.] State v. Difrisco, 174 [N.J.] 195, 220 (2002). Trial strategy is clearly within the discretion of

6

competent trial [c]ounsel[.]  State v. Coruzzi, 189 [N.J.] Super. 273, 321 [(App. Div. 1983)].

Where a PCR [j]udge can conclude that the trial [c]ounsel employed a strategy that, . . . "had a logical basis and consistency," which should not be second guessed, the [c]ourt will not grant a PCR petition.  In State v. Castagna, the [c]ourt declined to find the defendant demonstrated a prima facie case showing ineffective assistance of counsel where his trial [c]ounsel engaged in the . . . "high[-]risk strategy of [ad]mitting [the defendant's] guilt to lesser[-]included offenses in the hope [they] would enhance [the defendant's] credibility[.]"  187 [N.J.] 293, 316 (2006).

The second PCR court noted that defendant's petition did not specifically address the "possibility" that trial counsel's failure to move to sever was trial strategy.  Under these circumstances, the court concluded trial counsel's decision not to challenge joinder was trial strategy.  The court denied defendant's request for an evidentiary hearing.  This appeal followed.

In his appeal, defendant argues:

I.

THE PCR COURT ERRED IN FINDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO MOVE TO SEVER COUNT [SEVEN] FROM THE REMAINING COUNTS OF THE INDICTMENT.  (RAISED BELOW).

II.

THE PCR COURT ERRED IN FINDING THAT TRIAL COUNSEL AND FIRST PCR COUNSEL WERE NOT INEFFECTIVE FOR FAILING TO INVESTIGATE DEFENDANT'S ALIBI DEFENSES. (RAISED BELOW).

III.

THE PCR COURT ERRED IN NOT ADDRESSING DEFENDANT'S ARGUMENT THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS DEFENDANT'S STATEMENT TO POLICE. (RAISED BELOW [] BUT NOT ADDRESSED BY [THE] PCR COURT).

IV.

THE PCR COURT ERRED IN NOT HOLDING AN EVIDENTIARY HEARING WHERE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. (RAISED BELOW).

II.

When a PCR court does not hold an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). To obtain an evidentiary hearing on a PCR petition, a defendant must establish a prima facie case for relief, demonstrate material issues of disputed fact, and show that an evidentiary hearing is

necessary to resolve the claims.  R. 3:22-10(b).  A defendant is only entitled to an evidentiary hearing when he or she "has presented a prima facie [claim] in support of [PCR]," meaning a defendant must demonstrate "a reasonable likelihood that his . . . claim will ultimately succeed on the merits."  State v. Marshall, 148 N.J. 89, 158 (1997) (quoting State v. Preciose, 129 N.J. 451, 462 (1992)).  We review an order declining to hold an evidentiary hearing for an abuse of discretion.  Preciose, 129 N.J. at 462.

As defendant rests all his claims for relief on his trial and first PCR counsels' alleged ineffective assistance, we review his claims under the familiar two-pronged standard in Strickland v. Washington, 466 U.S. 668 (1984), which our Supreme Court adopted in Fritz, 105 N.J. at 42.  To prevail on an ineffective-assistance-of-counsel claim, a defendant must establish:  (l) his counsel performed deficiently and made errors so egregious he was not functioning effectively as the Sixth Amendment guarantees; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 687, 694.

### III.

Defendant argues that trial counsel was ineffective by failing to move to sever count seven from the remainder of the indictment.  Counts one, two, three,

and five charged defendant with second-degree sexual assault; count four charged fourth-degree criminal sexual contact; count six charged second-degree aggravated sexual assault; and count seven charged first-degree aggravated sexual assault when the victim was under the age of sixteen. Defendant also claims his first PCR counsel was ineffective for failing to raise this issue in his first PCR petition.

Defendant maintains the failure to sever count seven "subjected the jury to highly prejudicial evidence" that would have been inadmissible if the counts had been tried separately. According to defendant, trial counsel's failure to request severance was not a strategic choice but rather an oversight, which "fundamentally distorted the jury's assessment of the remaining charges." Defendant asserts trial counsel's clear omission fell below prevailing professional norms and constituted ineffective assistance of counsel. Defendant contends severance would have preserved the fairness of the proceeding by ensuring a jury verdict on each count based on "relevant and admissible evidence." Instead, defendant claims the probative value of any evidence of the aggravated sexual assault under count seven, or of a prior "consensual sexual relationship" between defendant and the victim, was outweighed by prejudice based on tainted, impermissible character inferences.

A-3811-23

Defendant would have faced a high burden to secure severance. "More than a cavil allegation of prejudice must be offered to warrant an order for separate trials of properly joined offenses." State v. Reldan, 167 N.J. Super. 595, 598 (Law. Div. 1979), rev'd on other grounds, 185 N.J. Super. 494 (App. Div. 1982). "[I]f separate offenses were required to be tried separately in all circumstances, the multiplicity of trials would disserve the State and defendants alike." State v. Manney, 26 N.J. 362, 366 (1958).

"Central to the inquiry is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)][1] in the trial of the remaining charges.'" State v. Chenique-Puey, 145 N.J. 334, 341 (1996) (alteration in original) (quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). "If the evidence would be admissible at both trials, then the trial court may consolidate the charges[,] because 'a defendant will not suffer any more prejudice in a joint trial than he [or she] would in separate trials.'" Ibid. (quoting State v. Coruzzi, 189 N.J. Super. at 299, certif. denied, 94 N.J. 531 (1983)).

"N.J.R.E. 404(b) is a rule of exclusion." State v. Vargas, 463 N.J. Super. 598, 611 (App. Div. 2020), certif. denied, 244 N.J. 302 (2020). It provides:

---

[1] N.J.R.E. 404(b) replaced the originally cited rule, N.J.R.E. 55.

(b) Other Crimes, Wrongs, or Acts [:]

> (1) Prohibited Uses. — Except as otherwise provided by [Rule] 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> (2) Permitted Uses. — This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

[N.J.R.E. 404(b).]

"Because other-crimes evidence has a 'unique tendency' to prejudice a jury against the defendant, it must be admitted cautiously."  State v. Gillispie, 208 N.J. 59, 85 (2011) (quoting State v. Reddish, 181 N.J. 553, 608 (2004)).  To admit other crimes evidence, the proponent must satisfy the test established in State v. Cofield, 127 N.J. 328, 338 (1992):

> (1) [i]t must be relevant to a material issue; (2) [i]t must be similar in kind and reasonably close in time to the offense charged; (3) [t]he evidence of the other crime must be clear and convincing; and (4) [t]he probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [State v. Covell, 157 N.J. 554, 564 (1999).]

A-3811-23

Rule 3:7-6 governs joinder of offenses, which permits a defendant to be charged with "[t]wo or more offenses . . . in the same indictment or accusation in a separate count for each offense[,] if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan."

The critical inquiry in a judge's decision to implement joinder or sever the charges against defendant is stated in Pitts, 116 N.J. at 601-02, and asks whether "assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges."

Defendant maintains that had his trial counsel filed a timely motion to sever, there was a reasonable probability the trial court would have conducted a Cofield analysis before admitting certain evidence and consequently ordered separate trials under Rule 3:15-2(b). Defendant contends a Cofield analysis would have demonstrated that evidence of the first-degree aggravated sexual assault—count seven—would not have been admissible under N.J.R.E. 404(b) in a trial solely addressing the statutory rape charges.

## The First Cofield Prong

We conclude the first <u>Cofield</u> prong is satisfied here because the evidence related to the first-degree aggravated sexual assault count, which included the victim's testimony that was relevant to material issues contained within the statutory rape charges.  127 N.J. at 338.  In <u>Cofield</u>, our Court "reemphasize[d] . . . that the material issue must be genuinely disputed."  <u>Ibid.</u>  Moreover, the material issue in a trial solely based on statutory rape charges is whether the sexual activity occurred while the parties were their respective ages under the offense.  Defendant was thirty-four years old at the time he sexually assaulted the minor victim, who was fifteen years old.

Accordingly, the victim's testimony as to defendant's aggravated sexual assault against her was relevant to demonstrate he had a previous opportunity to engage in sexual relations with her on another occasion when she was underage, even if the trial only focused on charges that involve consensual sexual activity, as defendant claims.  Moreover, under N.J.R.E. 404(b)(2), we are satisfied that evidence related to the aggravated sexual assault would have been admissible as evidence of defendant's prior opportunities to have engaged in multiple encounters of statutory rape with the same victim.  The evidence could have also been relevant to the defendant's motive under the same reasoning.  N.J.R.E.

404(b)(2). Further, as the State points out, the sexual assaults correlated to the beginning and end of the victim's and defendant's ongoing relationship, where the parameters of those assaults changed in nature.

## The Second Cofield Prong

Defendant argues the second Cofield prong is not satisfied. He contends the first-degree aggravated sexual assault charge "must be similar in kind and reasonably close in time to" the statutory rape charges, however the forcible nature of the aggravated sexual assault charge makes it fundamentally different in kind from the "consensual" sexual acts in the remaining counts. 127 N.J. at 338. According to defendant, dissimilarities in kind, such that aggravated sexual assault involves violence and coercion, whereas statutory rape can involve consent, can defeat prong two. See State v. Rose, 206 N.J. 141, 160-62 (2011).

There is no merit to defendant's contentions. Here, the nature of both charges involves sexual acts with the same individuals. Additionally, the aggravated sexual assault charge from September 2012, was reasonably close in time to the statutory rape incidents, which began in November 2010 and occurred up until the September 2012 sexual assault.

Defendant's assertion that the nature of the two offenses must be dissimilar in kind because one involves force and the other consent is

unpersuasive, as statutory rape in New Jersey enforces the widespread legal notion of statutory incapacity, or how children are unable to legally consent to sexual activity with adults, which is dispositive here. The elements of the statutory rape statute do not require an inquiry as to whether the victim consented to the sexual act—as a violation occurs if the sexual activity merely occurred in the first place and if the parties were the requisite ages at the time. See N.J.S.A. 2C:14-2(c)(4) ("[a]n actor is guilty of sexual assault if the actor commits an act of sexual penetration with another person" and "[t]he victim is at least [thirteen] but less than [sixteen] years old and the actor is at least four years older than the victim").

Therefore, the victim's testimony as to the aggravated sexual assault charge, if introduced at trial, would not have prejudiced defendant, as the consensual relationship he alleges would not have negated an element of the statutory rape offense. See N.J.S.A. 2C:2-10 ("[t]he consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense").

16

## The Third Cofield Prong

As to prong three of the Cofield test, or "[t]he evidence of the other crime must be clear and convincing," defendant contends that even assuming the evidence could be proved clearly and convincingly, this prong alone does not justify joinder where the other prongs fail. Defendant does not identify any basis for finding prong three was not satisfied.

Here, the third Cofield prong can be satisfied because the evidence related to the aggravated sexual assault, the victim's trial testimony, was most definitely "clear and convincing." 127 N.J. at 338. Ultimately, the jury found defendant guilty on all counts based on the victim's emotional trial testimony. Furthermore, the victim's testimony provided a clear narrative about the sexual acts he perpetrated upon her.

## The Fourth Cofield Prong

Lastly, defendant argues that prong four of the Cofield test is unsatisfied because the "probative value of the evidence" supporting the aggravated sexual assault would have been outweighed by its prejudicial effect, if admitted at a trial solely based on statutory rape charges. 127 N.J. at 338. Defendant maintains the evidence of the aggravated sexual assault was "marginal" in proving the statutory rape offenses, because the jury likely conflated the

17

incidents and drew inferences regarding his character. Defendant contends the aggravated sexual assault charge relied heavily on credibility determinations, and the "emotionally charged evidence" posed a substantial risk that the jury would use the allegation of aggravated sexual assault to infer his guilt as to the other charges. Defendant claims courts have long recognized "[t]he danger of admitting other-crime evidence is that the jury may convict the defendant because he is a 'bad person' in general" or has a propensity to commit crimes. Cofield, 127 N.J. at 336.

Again, we disagree. The probative value of the evidence related to aggravated sexual assault would not have been outweighed by the possibility of prejudice. Whether the victim consented or not is irrelevant here. Therefore, evidence of an aggravated sexual assault that shows the victim did not consent to the act would not have been prejudicial to prove a charge that also does not allow consent as a defense. Even more so, knowing that defendant forcibly sexually assaulted the victim on one occasion does not have an overwhelming ability to taint a jury's determination of whether they had consensual sex on another occasion.

Evidence of the aggravated sexual assault has high probative value here, as it demonstrates defendant's sexual relationship with the victim was

continuing.  In light of their ongoing relationship, defendant could have taken advantage of the victim, and there was a substantial likelihood he had other opportunities to engage in sexual relations with her, even if consensual.

In sum, we conclude it was not ineffective assistance of trial counsel to not file a meritless motion.  State v. O'Neal, 190 N.J. 601, 619 (2007); see also State v. Echols, 199 N.J. 344, 361-64 (2009) (finding counsel was not ineffective for failing to raise a meritless issue an appellate court would deem harmless). Thus, defendant failed to satisfy the first Strickland prong, as his counsel did not perform deficiently or make an error so egregious that he was not functioning effectively as the Sixth Amendment guarantees.  466 U.S. at 694.

Additionally, defendant's second PCR petition failed to establish a reasonable probability that but for trial counsel's failure to sever count seven (and first PCR counsel's failure to raise this issue in defendant's first PCR petition), the results of the trial, direct appeal, and appeal from denial of the first PCR petition, would have been different.  Strickland, 466 U.S. at 694. Defendant therefore failed to satisfy his burden under Strickland's second prong. Ibid.

A-3811-23

## IV.

We next address defendant's failure to investigate and call alibi witnesses argument. Our Supreme Court has recognized that the "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." State v. Porter, 216 N.J. 343, 353 (2013); see also State v. Pierre, 223 N.J. 560, 582- 88 (2015). Indeed, "few defenses have greater potential for creating a reasonable doubt as to [a] defendant's guilt in the minds of the jury [than an alibi]." State v. Mitchell, 149 N.J. Super. 259, 262 (App. Div. 1977).

When a defendant claims his attorney inadequately investigated an alibi defense, "[the defendant] must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6). If properly supported, an alibi witness's certification should not be dismissed as not credible without an evidentiary hearing. See State v. Jones, 219 N.J. 298, 313-16 (2014) (holding that where the State's case turned on questions of credibility, and the alibi witness's account could have bolstered the defendant's version of events, the PCR court erred by not conducting an evidentiary hearing at which the alibi witness and counsel could testify); Porter, 216 N.J. at 356.

20

We are convinced the second PCR court correctly denied defendant's alibi-based PCR claims. Defendant acknowledges that we previously addressed the issue of his trial counsel's failure to investigate and call Roth, a former work supervisor, and Alston as alibi witnesses. State v. Celestine, No. A-1238-19 (App. Div. Nov. 8, 2021) (slip op. at 9-11) in affirming denial of his first PCR petition. However, defendant now raises an ineffective assistance of counsel claim against his first PCR counsel.

Defendant's contention is procedurally barred under Rule 3:22-5. ("A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this [R]ule or prior to the adoption thereof, or in any appeal taken from such proceedings"). However, for the sake of completeness, we add the following comments.

Here, we reiterate neither Alston nor Guzman obtained verifiable information regarding the specific dates that defendant worked at Violet Packing Company, McDonald's, or stayed at the Riviera Motel. Importantly, defendant failed to show that the human resources manager, a representative of McDonald's, or Roth, what they would have testified to, or what testimony

21

would have been exculpatory, required to be submitted by way of certification or affidavit.

The same holds true for Violet Packing Company. The second PCR judge addressed both investigators:

> . . . defendant alleges, ". . . Alston contacted Belinda Leach and Gwendolyn Rivera at Violet [Packing] where [defendant] was employed in 2010. Ms. Leach confirmed [defendant's] employment. . .
>
> However, the report of Alston dated June 18[], 2019, while confirming the duration of employment, does not identify any dates specifically worked. Further, the report of Guzman, OPD investigator, dated August 28[], 2023, provided he was unable to obtain records regarding the dates defendant worked there.
>
> . . .
>
> As provided by the initial PCR [j]udge and the Appellate Division, "defendant did not provide certifications or affidavits from the . . . employment supervisors. As a result, defendant failed to establish how they would have testified or what testimony would have been exculpatory. Defendant failed to satisfy either prong of [Strickland/Fritz] and, as a result, failed to establish a prima facie claim to warrant an evidentiary hearing.
>
> Here, there are purportedly documents that once existed that no longer exist that defendant alleges may have supported his alibi defense or established he was not at the motel on the dates alleged. Since there are no existing documents from his employment . . . he has no evidence to show but for [c]ounsel's failure to

22

investigate claims, his claims of exculpatory evidence,
the outcome would have been different.

[(Emphasis added).]

The second PCR court was correct in its analysis.

Regarding McDonald's, defendant maintains he worked at the Atlantic Avenue, Brooklyn location from August 7, 2012, until October 19, 2012. At trial, an exhibit was marked for identification and was used to refresh defendant's recollection as to the dates he worked but was not admitted into evidence. A letter dated December 27, 2012, from a McDonald's representative simply stated, "[Defendant] is no longer employed by Laurino Enterprises. [Defendant] worked at the McDonald's located on Atlantic Avenue in Brooklyn, NY . . . . He was employed from August 7, 2012 until October 19, 2012."

We held "[d]efendant did not provide certifications or affidavits from the manager and supervisor" and "failed to establish how they would have testified or what testimony would have been exculpatory." State v. Celestine, No. A-1238-19 (App. Div. Nov. 8, 2021) (slip op. at 10). The second PCR court found the same rationale applied.

We are also unconvinced trial and first PCR counsel were ineffective for failing to investigate or subpoena Roth. Defendant contends the Riviera Motel's records would have contradicted the State's timeline and supported his theory

23                                                                    A-3811-23

that the aggravated sexual assault could not have occurred. See Mitchell, 149 N.J. Super. at 262. Defendant provided no evidence to support his claim. Alston's report stated, "the owners provided me a card that had [defendant's] name on it and the dates he stayed at the motel." Alston concluded, "[t]he dates on the card identically matched the information provided by [defendant] as to when he was present at the motel," and "corroborated" the information he provided.

However, in our prior opinion, we noted Detective Pisano's testimony "directly contradicted" Alston's affidavit, "as Detective Pisano testified she was unable to gather any records from the motel." State v. Celestine, No. A-1238-19 (App. Div. Nov. 8, 2021) (slip op. at 10). The second PCR court adopted our reasoning. We discern no error. Therefore, defendant's trial and first PCR counsel's representation were therefore not constitutionally deficient under Strickland's performance prong.

V.

We similarly concur with the second PCR court's findings that defendant's trial counsel was not ineffective for failing to file a motion to suppress his statement to Detective Pisano. According to defendant, on September 27, 2012, his trial counsel advised law enforcement not to speak to defendant without

24

counsel present. Nonetheless, defendant was questioned and argues his statement is inadmissible under the Fifth and Sixth Amendments of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution.[2]

### Fifth Amendment

Defendant now claims the State cannot meet its burden of proving his statement was made voluntarily beyond a reasonable doubt. State v. Burris, 145 N.J. 509, 534 (1996). In terms of prejudice, defendant argues his trial counsel's failure to file a motion to suppress the statement led to a "damaging false-in-one, false-in-all" jury charge over objection, and the State was permitted to use it for impeachment.

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this [S]tate's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and . . . N.J.R.E. 503." State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)).

---

[2] "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense." N.J. Const. art. I, ¶ 10. (emphasis added).

In Miranda v. Arizona, 384 U.S. 436 (1966), "the United States Supreme Court declared that a person who is 'subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way,' . . . 'must be adequately and effectively apprised of his rights[.]'" Bullock, 253 N.J. at 532 (internal citations omitted) (quoting Miranda, 384 U.S. at 467). "[A] confession or incriminating statement obtained during a custodial interrogation may not be admitted in evidence unless a defendant has been advised of his or her constitutional rights." Id. at 533 (quoting State v. Hubbard, 222 N.J. 249, 265 (2015)).

A defendant may waive his or her Miranda rights. A waiver of a defendant's Miranda rights may "never be the product of police coercion" but must instead be "knowing, intelligent, and voluntary in light of all the circumstances." State v. Presha, 163 N.J. 304, 313 (2000). A waiver may "be established even absent formal or express statements." Berghuis v. Thompkins, 560 U.S. 370, 383 (2010). "An explicit statement is not necessary as '[a]ny clear manifestation of a desire to waive is sufficient,' and instead we look for a 'showing of a knowing intent.'" State v. A.M., 237 N.J. 384, 397 (2019) (alteration in original) (quoting State v. Hartley, 103 N.J. 252, 313 (1986)).

26

Although federal law requires that a waiver be proven "by a preponderance of the evidence," Colorado v. Connelly, 479 U.S. 157, 168 (1986), New Jersey law requires the prosecution to "prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances." Presha, 163 N.J. at 313. When applying that standard, "'knowledge' is always a relevant factor," but "because the right is against compelled self-incrimination, 'knowledge' can be best understood as a condition of 'voluntariness,' which itself denotes the absence of 'compulsion.'" State v. Reed, 133 N.J. 237, 255-56 (1993) (emphasis omitted).

When "determining the validity of a Miranda waiver," trial courts must decide "whether the suspect understood that he did not have to speak, the consequences of speaking, and that he had the right to counsel before doing so if he wished." Nyhammer, 197 N.J. at 402 (quoting State v. Magee, 52 N.J. 352, 374 (1968)).

Accordingly, "a valid waiver does not require that an individual be informed of all information 'useful' in making his decision." Id. at 407 (quoting Colorado v. Spring, 479 U.S. 564, 576 (1987)). Instead, a knowing, intelligent, and voluntary waiver is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of

the trial court. See Presha, 163 N.J. at 313. In a totality of the circumstances analysis, we consider factors such as the defendant's "age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." Nyhammer, 197 N.J. at 402 (quoting Presha, 163 N.J. at 313).

Applying this well-established law, we conclude defendant was effectively advised of his Miranda rights by Detective Pisano. The record shows defendant was thirty-six years old at the time, had a high school education, and could read and write the English language. Detective Pisano inquired into defendant's history with the criminal justice system (which later revealed a substantial history of criminal convictions) and whether he had been Mirandized before. Defendant indicated he understood his rights. His subsequent responses to the Detective's questions were a product of his free will, not police coercion, and therefore, he voluntarily waived his right to remain silent. Nyhammer, 197 N.J. at 402.

We conclude the State established beyond a reasonable doubt defendant's knowing, voluntary, and intelligent waiver of his Miranda rights. Therefore, it was not ineffective assistance of trial counsel to withhold a meritless motion.

A-3811-23

O'Neal, 190 N.J. at 619. In a similar vein, first PCR counsel was also not ineffective for not raising this claim.

The second PCR court did not address defendant's impeachment argument as to the statement he provided to Detective Pisano. Because the second PCR court did not conduct an evidentiary hearing, we exercise de novo review over the factual references drawn from the documentary record. See State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020).

At trial, defendant testified on cross-examination as follows:

> [Prosecutor] . . . is it fair to say when you spoke with the investigators you denied any sort interaction or intercourse with . . . [the victim], correct?
>
> [Defendant] Yes. . . .
>
> [Prosecutor] So it's fair to say that you at least lied in some part when you were speaking with those investigators, correct?
>
> [Defendant] Yes.

Here, the State's use of this statement to impeach defendant's credibility was proper, because both the United States and New Jersey Supreme Courts recognize an exception to the exclusionary rule—which would normally exclude evidence based on a constitutional violation, when it relates to the impeachment of a witness at trial. See Harris v. New York, 401 U.S. 222, 232 (1971)

29

("[A]lthough any statement they obtain[ed] in violation of <u>Miranda</u> cannot be used on the State's direct case, it may be introduced if the defendant has the temerity to testify in his own defense"); <u>State v. Harris</u>, 181 N.J. at 440 ("Statements taken in violation of <u>Miranda</u> may be used for impeachment when they were given freely and voluntarily" pursuant to the due process clause); <u>Burris</u>, 145 N.J. at 525 ("The impeachment exception is strictly limited to situations in which the suppressed statement is trustworthy and reliable in that it was given freely and voluntarily without compelling influences").

The United States Supreme Court has also addressed this in relation to the Sixth Amendment. <u>See</u> <u>Kansas v. Ventris</u>, 556 U.S. 586, 587 (2009) (Sixth Amendment "tainted evidence is admissible for impeachment"). We have explicitly concluded the same. <u>See</u> <u>State v. Lopez</u>, 473 N.J. Super. 222, 238 (App. Div. 2022), <u>certif. denied</u>, 253 N.J. 290 (2023) ("we are satisfied that the [trial] court did not err when it concluded that defendant's statements to detectives were admissible to impeach him should he testify").

N.J.R.E. 607(a) permits a party to impeach the credibility of a witness by introducing extrinsic evidence: "[f]or the purpose of attacking or supporting the credibility of a witness, any party, including the party calling the witness, may examine the witness and introduce extrinsic evidence relevant to the issue of

credibility." Using a defendant's prior inconsistent statement for impeachment purposes also requires the following:

> [e]xtrinsic evidence of a witness' prior inconsistent statement may be excluded unless the witness is afforded an opportunity to explain or deny the statement and the opposing party is afforded an opportunity to interrogate on the statement, or the interests of justice otherwise require. This rule does not apply to admissions of a party opponent as defined in [N.J.R.E.] 803(b).
>
> [N.J.R.E. 613(b).]

Here, the State satisfied N.J.R.E. 607(a), as it introduced extrinsic evidence of defendant's statement "[f]or the purpose of attacking or supporting the credibility of a witness," and N.J.R.E. 613(b) by "afford[ing] [him] an opportunity to explain or deny the statement." Lastly, the statement was given freely, voluntarily, and without compelling influences, and was therefore trustworthy and reliable. Burris, 145 N.J. at 525.

Sixth Amendment

Defendant contends his right to counsel under the Sixth Amendment and Article I, Paragraph 10, of the New Jersey Constitution was violated because he was not told he was being questioned about a filed criminal complaint. See N.J. Const. art. I, ¶ 10 ("the accused shall have the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against

31

him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense"). Defendant also maintains that he did not initiate contact with law enforcement during the interrogation and did not knowingly waive his right to have counsel present, similar to the constitutional violations in Reed, 133 N.J. at 251-53.

We are not required to consider a defendant's issue on appeal if he or she could have presented it before the trial court when such opportunity was ripe. See State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)) ("[A]ppellate courts will decline to consider questions or issues [on appeal that were] not properly presented to the trial court when an opportunity for such a presentation [was] available"); See State v. Galicia, 210 N.J. 364, 383 (2012) ("an appellate court will not consider issues, even constitutional ones, which were not raised below"). Notwithstanding the above, we note Rule 3:22-4(a) is controlling here:

> Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds:

32

(1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding;

. . . .

A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence.

[Rule 3:22-4(a).]

Under the United States Constitution, the United States Supreme Court "has never held that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of Miranda rights." Colorado v. Spring, 479 U.S. at 576. Further, defendant's same contention under the New Jersey Constitution contradicted by the record. Detective Pisano informed defendant of the nature and cause of the accusation against him when she stated, "I know you had sex with her. . . I know it started back when she was fifteen. . . . That's not really a big deal, that's a statutory case[,] but I also know that she's now saying that you raped her."

Defendant also contends that his Sixth Amendment right to counsel was violated because he did not initiate contact with law enforcement during the

interrogation and did not knowingly waive his right to have counsel present, relying on Reed, 133 N.J. at 251-53. We are unpersuaded.

"The right to counsel granted by the Sixth . . . Amendment[] means . . . a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him[,] 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Brewer v. Williams, 430 U.S. 387, 398 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)). Accordingly, defendant's right to counsel under the Sixth Amendment attached when he was formally indicted. Here, defendant was arrested on September 20, 2012, thereafter provided a statement on either October 16, 2012, or February 20, 2013, and was formally indicted on March 27, 2023. Therefore, defendant was questioned before he was indicted, and consequently his right to counsel under the Sixth Amendment was not violated. See Moran v. Burbine, 475 U.S. 412, 428-30 (1986) (finding law enforcement did not violate defendant's right to counsel because he had not been formally charged).

Defendant's contention that his Fifth Amendment right to counsel was violated also lacks merit, as he attempts to misconstrue the holding of Reed. As Reed points out, the right to counsel "implicated in the exercise of the privilege

against self-incrimination in the pre-indictment stage of a criminal prosecution, . . . is not the [same] right to counsel that is constitutionally guaranteed once a defendant has been indicted." 133 N.J. at 263.

Under the Fifth Amendment right to counsel, "once a defendant has invoked his [or her] right to have counsel present," or "expressed his [or her] desire to deal with the police only through counsel," he [or she] is "not subject to further interrogation by the authorities until counsel has been made available to him [or her], unless the accused himself [or herself] initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). In the matter under review, since defendant never expressed an "unambiguous or unequivocal request for counsel," to invoke his Fifth Amendment right, the protections he alleges are not involved. We conclude Detective Pisano had no obligation to stop questioning defendant. Davis v. United States, 512 U.S. 452, 461-62 (1994). Lastly, Reed is not applicable here because "to the knowledge of the police," defendant's attorney did not "communicate[] a desire to confer with [him]." 133 N.J. at 261-62.

We are convinced the second PCR court did not abuse its discretion in denying defendant an evidentiary hearing. Here, defendant's "allegations are

35

too vague, conclusory, or speculative" to warrant an evidentiary hearing.

Marshall, 148 N.J. at 158.

     Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-3811-23